ELI STROUSE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 36273.  Promulgated November 11, 1931.

*Ernest E. Wooden, C. P. A.*, for the petitioner.

*Eugene Harpole, Esq.*, and *Edwin M. Niess, Esq.*, for the respondent.

OPINION.

Smith: The respondent admits that the petitioner, by surrendering his preferred stock to the other preferred stockholders in 1923, sustained a loss in that year of $135,797.96. The only question left for our determination is whether the loss thus sustained was a statutory net loss of 1923 which the petitioner may deduct from his gross income of the year 1924. Section 206 (f) of the Revenue Act of 1924 provides as follows:

If for the taxable year 1923 a taxpayer sustained a net loss within the provisions of the Revenue Act of 1921, the amount of such net loss shall be allowed as a deduction in computing net income for the two succeeding taxable years to the same extent and in the same manner as a net loss sustained for one taxable year is, under this Act, allowed as a deduction for the two succeeding taxable years.

A net loss is defined in section 204 (a) of the Revenue Act of 1921 as one " resulting from the operation of any trade or business regularly carried on by the taxpayer."

What was the trade or business carried on by the petitioner during the year 1923?

The petitioner testified that by reason of agreements made by him in 1917 with Benjamin Strouse and the executors of the estate

of Isaac Strouse he had guaranteed the redemption of their preferred stock in Strouse Bros., Inc., by that corporation. The corporation ran into financial difficulties in 1919, and, during that and subsequent years, was not able to redeem as much of the preferred stock of the corporation as it had agreed to redeem. In January, 1923, the petitioner turned over his preferred stock to the other stockholders in pursuance of his guaranty. He thereby sustained a loss upon his preferred stock of $135,797.96. The petitioner continued as president of Strouse Bros., Inc., which in fact had not been fully liquidated up to the date of hearing of this proceeding. The record is not clear as to when the petitioner started to liquidate the business of the corporation. On direct examination he testified that he transferred his shares of the preferred stock to Benjamin Strouse and the estate of Isaac Strouse in order that he might continue to receive his salary as president of the corporation. On cross-examination he testified that he became president of the Regatta Manufacturing Company in August, 1921, *after* the liquidation of the business of Strouse Bros., Inc. His testimony upon this point is as follows:

Q. I notice here [income-tax return of 1924] you say you are an official of the Regatta Manufacturing Company?

A. At the present time, after our liquidation.

Q. This was in 1924?

A. Oh, yes. I am president today of the Regatta Manufacturing Company. After we liquidated our business I went into another business.

Q. When did you go into this other business?

A. August, 1921.

Q. And you were in the business in 1923?

A. In the Regatta business?

Q. Yes.

A. Yes, sir. I think that was the date.

A serious question arises as to whether the loss of the petitioner's investment in the preferred stock of Strouse Bros., Inc., was sustained in 1923 " from the operation of any trade or business regularly carried on by the taxpayer." As was said by the Circuit Court of Appeals for the Fifth Circuit in *Anderson* v. *United States*, 48 Fed. (2d) 201:

It is apparent that the net loss sought to be deducted by appellant did not result from the operation of any trade or business regularly carried on by him. It is evident that Congress intended to give relief to persons engaged in an established business for losses incurred during a year of depression in order to equalize taxation in the two succeeding more profitable years. It was not intended to apply to isolated or occasional losses such as here shown. Why the same privilege was not accorded to all taxpayers is a matter that addresses itself to Congress and not to the courts. The definition can not be stretched to cover the case before us. *Appeal of Harrington*, 1 B. T. A. 11; *Rogers* v. *U. S.*, 41 F. (2d) 865; *Lederer* v. *Cadwalader*, (C. C. A.) 274 F. 753; 18 A. L. R. 411; *Woods* v. *Lewellyn*, (D. C.) 289 F. 498.

The case of *Robert T. Cunningham*, 20 B. T. A. 428, is in point in this proceeding. Cunningham endorsed the note of a corporation that was not in financially sound condition and, as a result of the endorsement, was required in 1925 to pay the obligations of the corporation. He had also devoted approximately 50 per cent of his time to its affairs. The Board held, however, that the taxpayer's loss was not one resulting from the operation of a trade or business regularly carried on by him and that he was not entitled to carry forward the loss. Compare also *George Reisch et al.*, 22 B. T. A. 94.

It is to be noted that the petitioner was not engaged in the business of promoting, organizing or financing corporations. In this particular the instant case differs from *Harry F. Harper*, 20 B. T. A. 143, where we held that the loss sustained in financing, promoting, and investing in corporations by petitioner, who for several years had regularly engaged in these things as a business, was a net loss. There we found that the petitioner devoted an hour a day to consideration of stock transactions and from three to five hours a day to the consideration of financing corporations and individuals. The facts were similar in *T. I. Crane*, 17 B. T. A. 720, and *E. D. Anthony*, 20 B. T. A. 5, where we held that the losses sustained were deductible as net losses, and in *Washburn* v. *Commissioner*, 51 Fed. (2d) 949.

In *William M. Lovering*, 21 B. T. A. 1260, cited by the petitioner, we held that a net loss had been sustained. The evidence showed that the petitioner for several years had conducted a business of textile commission merchant. A substantial part of his commissions was earned upon sales of the products of a certain mill, which, in 1917, the petitioner took over in partial satisfaction of the mill's indebtedness to him. Thereafter he reorganized and incorporated the business and continued to sell its products. In 1923 he sustained a loss upon his endorsement of the notes of the corporation. In holding that the loss was a net loss we pointed out that the evidence was uncontradicted that the petitioner endorsed notes upon which he sustained a loss in order to keep the mill in operation so that he could sell its products and receive his commissions and that the loss was therefore incidental to the petitioner's business as a commission merchant. The facts in this proceeding are substantially different. Strouse Bros., Inc., was in process of liquidation from some time in 1921. The petitioner in 1923 simply turned over his preferred stock to satisfy his guaranty to Benjamin Strouse and the executors of the estate of Isaac Strouse in 1917 and subsequent years.

More succinctly stated, we think that where an officer or stockholder of a corporation sustains a loss upon his endorsement or

guaranty of an obligation of the corporation and the loss is not otherwise related to any business regularly carried on by him, it is not a net loss within the meaning of the statute.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

LANSDON, ARUNDELL, BLACK, and GOODRICH dissent.