PHILIP RHINELANDER, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54512.   Promulgated March 20, 1934.

*Spotswood D. Bowers, Esq.*, for the petitioner.

*John H. Pigg, Esq., Clay C. Holmes, Esq.*, and *L. H. Rushbrook, Esq.*, for the respondent.

OPINION.

SMITH: This is a proceeding for the redetermination of a deficiency in income tax for 1928 in the amount of $6,992.77.

The petition alleges that in the determination of the deficiency the respondent—

(1)   *   *   *   erroneously ruled that the amount of $25,806.23, allowed by the field agent as a statutory net loss of 1927 should not be carried over and the deduction in 1928 was improper, and that said deduction should not be allowed from the taxpayer's income.

(2)   *   *   *   erroneously ruled and decided that the loss of $163,560.81, sustained in 1927 was not sustained from a trade or business regularly carried on.

(3)   *   *   *   erred in ruling and deciding that the loss sustained by petitioner in his business as Treasurer of the Atlantic Mortgage Corporation in the year 1927, could not be carried forward into the year 1928 beyond the amount of his income for the year 1927.

The petitioner was a man of leisure until 1909, when his mother-in-law, Cornelia B. Kip, died, leaving him and her husband as executors and trustees under her will. The decedent's husband died in 1911 and since then the petitioner has been the sole executor and trustee and has maintained an office for the conduct of the business of the Kip estate, first at 20 Nassau Street, New York City, and since the spring of 1918 at 27 William Street, New York City, in the office of Miller & Hartcorn, attorneys for the Kip estate, the name of the estate appearing on the door of the office, and in the lease for the office.

On April 18, 1912, the Atlantic Mortgage Corporation was incorporated, and the petitioner, as executor and trustee of the estate of Cornelia B. Kip, subscribed for 1,000 shares of the preferred stock of the corporation. Hartcorn owned a controlling interest in the stock of the corporation, which was organized—

* * * to loan money, to be secured by mortgage on personal property or real estate, to buy, sell, or otherwise acquire notes, bonds, or other evidences of debt, secured by mortgages on personal or real estate, and also to purchase, lease, hire, or otherwise acquire, real or personal property, improved or unimproved, of every kind and description, and to sell, dispose of, or lease, convey and mortgage said property, or any part thereof.

From the incorporation of the company until December 31, 1917, the petitioner advanced funds on open account to the Atlantic Mortgage Corporation and certain other corporations in which Albert E. Hartcorn, a member of the firm of Miller & Hartcorn, was interested. These advances were made on open account with funds of the Kip estate and by the petitioner as administrator of the estate of his wife, Adelaide Kip Rhinelander, in his capacity as agent, and also individually. Up to December 31, 1917, the advances made to the Atlantic Mortgage Corporation were as follows:

| | |
|---|---:|
| From the Kip estate | $778, 622. 50 |
| From the estate of Adelaide Kip Rhinelander | 18, 600. 00 |
| By the petitioner as agent | 1, 250. 00 |
| By the petitioner, individually | 245, 341. 12 |
| Total | 1, 280, 813. 62 |

On May 1, 1918, the petitioner, having obtained information from which he claimed that Albert E. Hartcorn was largely indebted to the corporations to which advances had been made and that he had received the benefits of some of the advances, entered into an agreement with Albert E. Hartcorn by which he took over the stock and management of the corporations to which advances had been made, under which agreement he was to manage and liquidate the corporations, pay the advances made by the Kip estate and by his wife's estate, and by himself as agent and by himself, individually, and return to Hartcorn the surplus, if any, which there might be.

After this agreement was signed the liquidation of the properties of the corporations was undertaken by the petitioner. He elected his attorneys and brother as officers of the several corporations.

The properties were gradually liquidated and the debts paid off until there had been paid to the petitioner on account of his advances of $245,341.12 a sum sufficient to bring the amount due the petitioner down to $163,585.61.

At this time all the property had been disposed of except a parcel of property owned by the Atlantic Mortgage Corporation, known as the Lenox Theatre. To this property the corporation had a deed, but when it undertook to sell the property an old defeasance agreement was recorded, making the deed nothing but a mortgage.

Thereupon the Atlantic Mortgage Corporation brought a suit on the mortgage and was met with the defense that there was no consideration for the mortgage, and the trial court held that the plaintiff was unable to show that it had advanced the money required to be advanced and directed that the deed to the property be executed to the defendant, Kramer Construction Co. This decision was affirmed on appeal in 1927.

In 1927 the petitioner ascertained that he would definitely lose $163,585.61 on his personal advances to the Atlantic Mortgage Corporation.

Petitioner's income for the year 1927, before the deduction of any portion of the alleged loss of $163,585.61, was $142,759.38, and the excess of the loss from advances on open account to the Atlantic Mortgage Corporation over the income for the year 1927 was $20,826.23.

In this proceeding the petitioner submits that " during the period from 1912 to the end of the year 1917 the taxpayer was regularly engaged in the business of advancing money on open account to the Atlantic Mortgage Corporation and some 20 other corporations wholly owned or controlled by Albert E. Hartcorn "; that in the year 1927 the petitioner definitely ascertained that his loss from such advances on open account amounted to $163,585.61; and that, after applying this loss against the income for the year 1927, which amounted to $142,759.38, there was left the sum of $20,826.23, which the petitioner, under the provisions of section 117 (b) of the Revenue Act of 1928, was entitled to carry over into the year 1928 in computing his taxable income for that year.

The petitioner asks the Board to make the following finding of fact:

The sizes of the advances and the number of corporations to which same were made, both by the taxpayer individually and as executor and trustee of the Kip Estate, and as administrator of his wife's estate, and as agent,

are such that they constituted a considerable part of the occupation or business of the taxpayer, and were not merely occasional and isolated, but were continuous over a long period of time and were a part and parcel of the taxpayer's methods of conducting his own business and that of the Kip Estate during these years.

We are of the opinion that the evidence of record does not warrant the making of the finding requested. Alexander B. Neill, a certified public accountant who checked up the accounts of the petitioner for the purpose of determining the amount of advances which the petitioner had made to the Atlantic Mortgage Corporation. testified as follows:

Q. Had Mr. Philip Rhinelander himself made advances?
A. Yes.
Q. In what amount?
A. $245,341.12.
Q. And how was that built up?
A. On account of advances, $165,341.12, mortgages, personal, mortgages of his own, one-half interest, $80,000.
Q. That is, the mortgage was $160,000?
A. Yes.
Q. And his half interest was $80,000?
A. Yes.

*          *          *          *          *          *          *

THE MEMBER. Mr. Neill, on December 31, 1917, who was indebted to Philip Rhinelander in the amount of $245,000 odd?
THE WITNESS. The Atlantic Mortgage Corporation.
THE MEMBER. How was that indebtedness evidenced?
THE WITNESS. By cash advances made to Atlantic Mortgage Corporation of $165,341.12, a half interest in the mortgage of $160,000, which he owned, and which he assigned to the Atlantic Mortgage Corporation, which it used probably as collateral for loans.

From the evidence of record no finding can be made that the petitioner was engaged in a business of making loans of his own funds to the Atlantic Mortgage Corporation and other corporations. The evidence does indicate that he did make some loans of his own funds both to the Atlantic Mortgage Corporation and to another corporation. But it does not appear that the loaning of the petitioner's own money was anything more than incidental.

The respondent does not question the right of the petitioner to deduct from gross income of 1927 the amount of the loss sustained by him in 1927, viz., $163,585.61. He does contend, however, that this was not a net loss "attributable to the operation of a trade or business regularly carried on by the taxpayer." Sec. 117 (a) (1), Revenue Act of 1928. We sustain the respondent's contention.

In *Burnet* v. *Clark*, 287 U.S. 410, the Supreme Court had before it the question of whether an officer of a corporation which had sustained a loss by endorsement of the corporation's obligations and

by selling the corporation's securities had sustained a net loss under · the provisions of the Revenue Act of 1921. In the course of its opinion the Court stated:

The respondent was employed as an officer of the corporation; the business which he conducted for it was not his own. There were other stockholders. And in no sense can the corporation be regarded as his alter ego, or agent. He treated it as a separate entity for taxation; made his own personal return; and claimed losses through dealings with it. * * *

To the same effect see *Dalton* v. *Bowers*, 287 U.S. 404; *Eli Strouse*, 24 B.T.A. 748; affd., 59 Fed. (2d) 600. We are of the opinion that the petitioner does not stand in any better position than the petitioners in the above cited cases.

Reviewed by the Board.

*Judgment will be entered for the respondent.*