JOSEPH CAVEDON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 62278. Promulgated April 12, 1934.

*James F. Armstrong, Esq.,* for the petitioner.

*I. Graff, Esq.,* for the respondent.

OPINION.

McMahon: The question here presented is whether the petitioner sustained net losses during the years 1927 and 1928, within the mean-

ing of section 117 of the Revenue Act of 1928, which may be applied as deductions against the petitioner's income for the year 1929. Portions of section 117 of the Revenue Act of 1928 are set forth in the margin.[1] See art. 651, Reg. 71, as amended by T.D. 4349. The definition of " net loss " is substantially the same in the Revenue Act of 1926 as it is in the Revenue Act of 1928.

The net loss of $8,662.75 shown by petitioner's return for the year 1927 was due to the deduction of an amount of $59,039.84 which represented the petitioner's loss upon endorsement of a note of the Glenbrook Worsted Co. The net loss of $43,071.48 shown by the petitioner's return for the year 1928 (without deducting the net loss of $8,662.75 shown for the year 1927) was due to the deduction of an amount of $86,442.61. This last figure was made up of an item of $56,246.66 representing petitioner's loss upon the endorsement of indebtedness of the Planet Worsted Co. and an item of $30,195.95 representing petitioner's loss of his investment in the Planet Worsted Co. when that company became bankrupt. In addition to such losses in 1928, the petitioner at the hearing showed that he also sustained a loss of $64,370.27 upon his investment in the Crown Piece & Dye Works. Such loss, so far as we can gather from the evidence, was sustained upon loans which he had made to that corporation and upon his investment in its second mortgage.

The respondent concedes that the petitioner has shown that he sustained a loss in the amount of $64,370.27. There is no question as to the deductibility of these various losses in the years in which they were sustained, 1927 and 1928, for purposes of determining the taxes for those years. The question presented is whether the

---

[1] SEC. 117. NET LOSSES.

(a) *Definition of " net loss."*—As used in this section the term " net loss " means the excess of the deductions allowed by this title over the gross income, with the following exceptions and limitations:

(1) NON-BUSINESS DEDUCTIONS.—Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall be allowed only to the extent of the amount of the gross income not derived from such trade or business;

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(b) *Net loss as a deduction.*—If, for any taxable year, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the taxpayer for the succeeding taxable year (hereinafter in this section called " second year "), and if such net loss is in excess of such net income (computed without such deduction), the amount of such excess shall be allowed as a deduction in computing the net income for the next succeeding taxable year (hereinafter in this section called " third year "); the deduction in all cases to be made under regulations prescribed by the Commissioner with the approval of the Secretary.

\*　　　\*　　　\*　　　\*　　　\*　　　\*

(e) *Net loss for 1926 or 1927.*—If for the taxable year 1926 or 1927 a taxpayer sustained a net loss within the provisions of the Revenue Act of 1926, the amount of such net loss shall be allowed as a deduction in computing net income for the two succeeding taxable years to the same extent and in the same manner as a net loss sustained for one taxable year is, under this Act, allowed as a deduction for the two succeeding taxable years.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

petitioner sustained net losses in the years 1927 and 1928, within the meaning of section 117 of the Revenue Act of 1928, which may be allowed as deductions in computing the petitioner's net income for the year 1929. This, in turn, depends upon whether the losses sustained by the petitioner as set forth above are " attributable to the operation of a trade or business regularly carried on by the taxpayer."

Petitioner concedes in his brief that he was not a dealer in securities, but contends that he was engaged in the textile industry in its various ramifications during the years 1927 to 1929, inclusive, as a stockholder, officer, director, and organizer and in every other aspect of the industry, and that he has been so engaged for a period of more than 50 years.

Upon consideration of all the facts and circumstances and authorities cited by both parties, it is our opinion that the losses sustained by the petitioner were not attributable to the operation of a trade or business regularly carried on by the petitioner, within the meaning of the statute. It is our view that the instant proceeding is governed in principle by the decisions in *Burnet* v. *Clark*, 287 U.S. 410; and *Dalton* v. *Bowers*, 287 U.S. 404. In both of those cases the Supreme Court stated that the circumstances were not so unusual as to create an exception to the general rule for tax purposes that a corporation is an entity distinct from its stockholders. In our opinion, it has not been shown in the instant proceeding that the circumstances are so unusual as to create an exception to such general rule.

The occupation of the petitioner in the instant proceeding was that of officer and director of the various corporations. The greater part of his income was derived from salary from them. The petitioner was not regularly engaged in endorsing notes, making loans, or buying and selling corporate securities. The transactions resulting in the losses were no part of a trade or business regularly carried on by the petitioner, but were transactions entered into from time to time. There is nothing in the evidence to indicate that the corporations were his agents. The textile business was that of the corporations, and the petitioner, as director, officer, and dominant factor of such corporations, was merely carrying on the business for the corporations.

In *John C. Shaffer*, 28 B.T.A. 1294, the stipulated facts showed that from 1901 to 1928, inclusive, the taxpayer was engaged in the business of editing and publishing newspapers through the medium of several corporations which he owned and controlled. The taxpayer disposed of his interests in one of such corporations at a loss, in 1924 and 1926. His total investment therein was made up of various items such as cost of stock and bonds, cash advances, and

payment of notes held by other companies. In 1926 he disposed of his interests in another of such corporations at a loss. His investment in the second corporation consisted of similar items. We held, among other things, upon authority of *Burnet* v. *Clark, supra,* that such losses were not sustained in the operation of a trade or business regularly carried on by the taxpayer and hence were not deductible in computing statutory net losses for those years. We there stated in part:

He was not a dealer in securities; and he was not engaged in buying and selling newspaper publishing corporations as a business. The stipulation states that the petitioner "was engaged in the trade or business of editing and publishing newspapers through the medium of several corporations which he owned and controlled."

See *Benjamin I. Powell*, 26 B.T.A. 509; *Winthrop Ames*, 27 B.T.A. 729; affd., *Ames* v. *Commissioner*, 68 Fed. (2d) 801; and *Philip Rhinelander*, 30 B.T.A. 121.

We have not overlooked *Security First Nat. Bank of Los Angeles et al., Executors*, 28 B.T.A. 289, which is relied upon by the petitioner. However, it is our view that that case is not controlling here. Obviously, the facts in all cases of this character are somewhat different, and each case must be decided upon its own peculiar facts.

The determination of the respondent is approved.

Reviewed by the Board.

*Decision will be entered for the respondent.*

