ESTATE OF R. R. RUSSELL, AND J. L. BORROUM, T. P. RUSSELL AND O. H. JUDKINS, EXECUTORS AND TRUSTEES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 59226. Promulgated June 25, 1936.

*A. J. Lewis, Esq.,* for the petitioner.

*Hunter B. Linton, Esq.,* and *Dean P. Kimball, Esq.,* for the respondent.

718

**OPINION.**

SEAWELL:[1] The petitioner claims that its 1926 net loss should be increased by the following alleged losses:

|   | | | |
|---|---|---|---|
| 1. | W. J. Rutledge note | | $37,509.59 |
|    | R. H. Martin note | | 19,904.08 |
|    | R. H. Martin & Co. note | $24,786.54 | |
|    | Interest | 10,375.76 | |
|    | | | 35,162.30 |
|    | R. H. Martin & Co. debts | | 1,812.53 |
| 2. | Russell-Coleman Oil Mill Co. note | | 107,208.81 |
|    | Beeville Oil Mill Co. note | | 101,062.74 |
|    | Beeville Oil Mill Co. debts | | 4,358.29 |
|    | R. H. Martin note | | 4,984.28 |

[1] This decision was prepared during Mr. Seawell's term of office.

The petitioner concedes that the amount of the losses arising out of the decedent's endorsement of notes of the corporations should be decreased by $120,000 on account of deductions taken in the estate tax return, and it is agreed that the remaining amounts of such items, together with the other losses, should be reduced one-half to reflect the widow's community property interest in the estate.

Deductions from gross income, including net losses, are allowable only when clearly provided for by statute. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435. The statutes allow, as deductions in the computation of a net loss, losses "attributable to the operation of a trade or business regularly carried on by the taxpayer." Sec. 206, Revenue Act of 1926; secs. 117 and 169, Revenue Act of 1928. The amount of the several claimed losses is not in controversy.

The petitioner's contention is that all of the losses are attributable to trades or businesses regularly carried on by the decedent during his lifetime, and, having continued such trades or businesses after his death, it is entitled to the benefits of the statute. The respondent's position on the point is that the petitioner was regularly engaged in only the ranching business, and, as none of the losses are attributable to such business, the items form no part of the petitioner's net loss in 1926.

The thing of importance respecting the items in group one is whether they are attributable to a trade or business regularly carried on by the decedent before his death, or his executors, the petitioner. The Rutledge note was endorsed and the note of R. H. Martin & Co. was acquired by the decedent during his lifetime. The Martin note for $19,904.08 was acquired by the petitioner in settling the affairs of R. H. Martin & Co. and the remaining claimed losses in group one resulted from the payment of debts of that partnership after the settlement with Martin, the surviving partner.

During his lifetime the decedent was regularly engaged in the ranching business, including the purchase and sale of livestock, in his individual capacity and as a member of partnerships. He endorsed the Rutledge note and received the partnership note in the ordinary course of operating his individual ranching business, and had the losses occurred prior to his death, undoubtedly the amount thereof would have been available to him in the computation of a net loss. His liability as an endorser existed at the time of his death and the losses resulting from it would have been sustained if the executors had not engaged in any line of business.

The activities of the executors consisted of administering the estate of the individual, including the liquidation of liabilities thereof, and operating the ranches formerly owned and operated by the decedent

in his individual capacity. Russell's death worked a dissolution of the partnership of R. H. Martin & Co., and the activities of the executors as to it related only to settling its affairs as required by law. The ordinary duties of an executor, such as the executors here were performing in settling the liabilities of the estate on the notes and winding up the affairs of R. H. Martin & Co., do not constitute a trade or business regularly carried on. *O. A. Refling, Executor*, 17 B. T. A. 327; affd., 47 Fed. (2d) 859; *Charles Lesley Ames, Executor*, 14 B. T. A. 1067; affd., 49 Fed. (2d) 853; *People's Pittsburgh Trust Co.* v. *United States*, 6 Fed. Supp. 447; *Eli Strouse*, 24 B. T. A. 748; affd., 59 Fed. (2d) 600. Thus the losses referred to were not attributable to any trade or business regularly carried on by the petitioner unless under the statute it and the decedent are one and the same taxpayer. In our opinion they are not.

A new corporation formed to acquire the assets and business of an existing corporation in exchange for its stock may not obtain the benefit of a net loss of the old corporation in the computation of its net income. *New Colonial Ice Co.* v. *Helvering, supra.* Under a ruling of the Commissioner of long standing a net loss of an individual may not be carried forward in determining net income of his estate, the theory of the principle being that the two are not a single taxpayer. I. T. 1562, C. B. II–1, p. 33. The statutes classify the estate of a decedent as a taxpayer. Sec. 2, 1926 Revenue Act; sec. 701, 1928 Revenue Act. The taxable net income of an individual and an estate are not computed in the same manner. Certain specified contributions made by an estate pursuant to the terms of the will are deductible from gross income without limitation, whereas in the case of an individual the amount of the deduction is limited. Contributions to a public cemetery may be deducted by an estate, but not by an individual. In the case of an estate, the credit allowed is the same as that for a single person, with no allowance for dependents. Sections 214 (a) and 219 (b), Revenue Act of 1926, which contain other provisions peculiar to estates. No credit is available to an estate for earned income. Sec. 209, 1926 Revenue Act. A further distinction is that property of the decedent acquired a new basis when it was acquired by the estate. Sec. 113 (5), 1928 Revenue Act. In *Hartley* v. *Commissioner*, 295 U. S. 216, the Court, in holding that under the 1924 and 1926 Acts the basis for property in the hands of the executor acquired from the decedent was the fair market value thereof at the time of the decedent's death, rather than the decedent's basis, said: "The revenue acts consistently treat the estate of a decedent in the hands of an administrator or executor as a separate taxpayer."

The fact of continuity of the business was stressed by the petitioner in *New Colonial Ice Co.* v. *Helvering, supra,* but the Court did not regard it as controlling, saying:

\* \* \* Besides, the matter of importance here, as will be shown presently, is not continuity of business alone but of ownership and tax liability as well. Had the transfer from one company to the other been effected by an unconditional sale for cash, there would have been continuity of business, but not ownership or tax liability.

The losses contained in group one were not attributable to any trade or business regularly carried on by the petitioner, but to businesses regularly carried on by the decedent prior to his death, and, the estate being a taxable entity separate from the individual, the petitioner is not entitled to include the items in the computation of its net loss for 1926.

The decedent and Martin had equal interests in the partnership of R. H. Martin & Co. In closing up the affairs of the firm it was determined that Martin owed the estate the sum of $19,904.08 on the two partnership notes it held, each in the face amount of $24,786.54. Whether the third note of a like sum, held by the City National Bank of San Antonio, was taken into the reckoning is not shown by the record. If the decedent's investment in the partnership resulted in taxable gain or deductible loss, the amount thereof should have been reflected in the return of the estate for 1924, the year in which the settlement was made between Martin and the estate. The loss on the note given by Martin did not result from any partnership activity of the decedent or his executors, but was due to the failure of Martin to pay the obligation. *Lewis G. Carpenter,* 33 B. T. A. 1.

The partnership debts of $3,625.06 were paid after the settlement was entered into between the partners but prior to 1926, and can not on any ground be allowed as a deduction in 1926.

The items in group two relate to losses resulting from endorsement of notes of two corporations, debts paid for the account of one of the corporations, and an individual note of R. H. Martin. In *Burnet* v. *Clark,* 287 U. S. 410, the taxpayer at various times endorsed notes of a corporation of which he was a majority stockholder and president, and to the affairs of which he devoted a large part of his time. He was not regularly engaged in endorsing notes or buying and selling securities. From these basic facts the Court refused to allow, in the computation of net losses, amounts the taxpayer paid out to satisfy his liability as endorser of the corporation's notes.

Neither the decedent nor the petitioner was regularly engaged in the business of endorsing or guaranteeing notes, making advances to, or paying debts of corporations. Under the rule announced in the *Clark* case, *supra,* the losses sustained on the corporate notes and debts paid for one of them would not have been deductible by the decedent

in the computation of a net loss had they occurred during his lifetime. His estate, a separate taxpayer, acquired no greater rights.

The loss sustained on the individual note of R. H. Martin has no relation to any trade or business regularly carried on by the estate or by the decedent prior to his death, and, like the other losses, may not be used in the computation of a net loss of the petitioner for 1926.

*Decision will be entered under Rule 50.*