H. F. Wilcox and Olga Wilcox (Husband and Wife) v. Commissioner.
Wilcox v. Commissioner
Docket No. 110418.
United States Tax Court
1944 Tax Ct. Memo LEXIS 396; 3 T.C.M. (CCH) 28; T.C.M. (RIA) 44012; January 18, 1944
*396 John E. McClure, Esq., for the petitioners. Stanley B. Anderson, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: This case involves an income tax deficiency of $1,543.14 determined by the respondent for the year 1939. The question presented is whether respondent erred in disallowing a deduction of $54,342.94 claimed by petitioners as a loss, under section 23(e), Internal Revenue Code, or as an expense, under section 23(a), Internal Revenue Code. The case was submitted on original and supplemental stipulations of fact and exhibits, which we incorporate herein by reference, and oral testimony. We will set forth those facts which are deemed necessary to an understanding of the issues presented. Findings of Fact The petitioners are husband and wife, residing in Tulsa, Oklahoma. They filed a joint return for the calendar year 1939 with the collector of internal revenue for the district of Oklahoma. The H. F. Wilcox Oil & Gas Company (hereinafter referred to as the Oil Company) was organized under the laws of the State of Delaware on November 4, 1918, and shortly thereafter was authorized to do business in the State of Oklahoma, with its office *397 and principal place of business in Tulsa, Oklahoma. Since the formation of said Oil Company, petitioner H. F. Wilcox has been its president, a director thereof, and he and his family, either directly or indirectly, have owned a substantial amount of its stock. H. F. Wilcox Loan & Investment Corporation (hereinafter referred to as Investment Company) was organized under the laws of the State of Delaware on April 26, 1923, with its office and principal place of business in Tulsa, Oklahoma. Since the formation of said Investment Company, petitioner H. F. Wilcox has been its president, a director thereof, and he, his wife and their children have owned all of its stock. In December, 1932, Apex Loan & Investment Company (hereinafter referred to as the Apex Company) was organized under the laws of the State of Delaware by the stockholders of the Investment Company, said Apex Company acquiring all of the assets of the Investment Company, whereupon the Investment Company was dissolved. On December 11, 1936, Apex Company reincorporated under the laws of the State of Oklahoma and on January 11, 1937, it surrendered its Delaware charter. On September 27, 1939, the Apex Company (Oklahoma) was *398 dissolved and all of its assets were turned over to its stockholders, H. F. Wilcox and members of his family. During their existence, neither Investment Company nor Apex Company paid any dividends. A tabulation attached to the stipulation of facts shows that on December 31, 1922, the Wilcox family owned 767,328 shares of Oil Company stock and 1,941,112 shares were outstanding. From December 31, 1923, through December 31, 1938, it shows that the Wilcox family owned no shares of Oil Company stock and that a varying number of shares during said time were owned by the Investment Company or the Apex Company. During 1925 the Oil Company stockholders received one share of new stock in exchange for each five shares of old stock. On December 31, 1938, the Apex Company owned 93,921 shares of Oil Company stock and 487,568 shares were outstanding. On April 28, 1938, a Second Amended Bill of Complaint was filed in a case then pending in the District Court of the United States for the Northern District of Oklahoma, wherein two stockholders of the Oil Company, on behalf of themselves and such others as desired to join, were plaintiffs, and the Oil Company, the Investment Company, the Apex Company *399 and H. F. Wilcox were defendants. Therein it was charged that H. F. Wilcox was the owner of a large amount of the capital stock of the Oil Company, directly or indirectly through the Investment Company or the Apex Company, which were alleged to be dominated and controlled by him; that by reason thereof he was in absolute control of the management and operations of the Oil Company over a period of years, its officers, employees, and at least a majority of its board of directors being subject to his dominance; and that H. F. Wilcox had over a period of years mismanaged and misguided the affairs of the Oil Company, pursuant to a plan and scheme having as its object his individual enrichment and unlawful profit to the detriment of the Oil Company and its other stockholders. A number of specific transactions were complained of as a result of which H. F. Wilcox, acting individually or through his controlled corporations, is alleged to have wrongfully and fraudulently obtained the transfer of funds and stock of the Oil Company to him personally or to the Investment Company or the Apex Company, or otherwise to have utilized assets of the Oil Company for his personal benefit or for the benefit *400 of the Investment Company or the Apex Company. The Second Amended Bill of Complaint prays that receivers be appointed of all of the assets of the defendant Companies; that H. F. Wilcox, the Investment Company and the Apex Company be ordered to account to the Oil Company for all moneys, properties, profits and other benefits received by virtue of the transactions complained of; that upon said accounting the Oil Company have judgment against H. F. Wilcox, the Investment Company and the Apex Company for the amount so determined; that all of the assets of the Investment Company and the Apex Company be declared to be held by them in trust for the Oil Company, to the extent determined by the accounting and that the Oil Company have a lien upon said assets to secure payment; that all of the common stock of the Oil Company issued to and held by H. F. Wilcox, the Investment Company and the Apex Company be cancelled; and that such other relief be granted as the court deems equitable, with costs. Thereafter a motion to dismiss was filed by the Oil Company through its board of directors (H. F. Wilcox not participating), asserting that the plaintiffs had no right to maintain the action. On April *401 11, 1939, the parties filed a "Report of Proposal for Dismissal of This Action", proposing, upon approval of the court after notice to the stockholders of the Oil Company, that H. F. Wilcox shall pay the Oil Company $15,000 in cash and shall transfer, assign and deliver to the Company 15,000 shares of its common capital stock; the Oil Company shall execute and deliver to H. F. Wilcox, the Investment Company and the Apex Company (a) its general release covering all claims and demands against said persons, whether or not asserted in the action, and (b) its option granting H. F. Wilcox the right to purchase said 15,000 shares of common stock at $3.00 per share within five years from the date of the option; the court shall fix a reasonable fee for plaintiffs' attorneys and auditor, to be paid by the Oil Company; and that an order be entered dismissing the case and another related case, with prejudice, at defendants' cost. On April 27, 1939, the court entered its decree approving the proposed settlement and directing that it be carried out. The court fixed the fees for plaintiffs' attorneys at $15,000 and for their auditor at $1,250 and directed the Oil Company to pay said fees. The case *402 and a related case were thereupon dismissed with prejudice, at defendants' cost. The decree was carried out and H. F. Wilcox paid over to the Oil Company $15,000 in cash and transferred, assigned and delivered to the Oil Company 15,000 shares of its common capital stock having a cost value of $39,189.10, which, together with legal expenses of $153,84, totals $54,342.94, involved in this proceeding. The offer of settlement made by the defendants in the stockholders' suit, above described, and the compromise subsequently agreed upon by the parties, were based primarily upon the following transactions complained of by the plaintiffs therein: (1) In 1924 H. F. Wilcox, or the Investment Company, purchased the Sutton lease in Russell County, Kansas, for $30,000, which the Investment Company sold to the Oil Company in the same year for $390,000, the Investment Company reporting a profit from said transaction in the amount of $360,000 on its income tax return for 1924. (2) In 1925, the Investment Company purchased from M. M. Valerius 10 percent of the stock of the M. M. Valerius Oil & Gas Company, at a lost of $102,867.23, and later in that year the Investment Company sold said stock *403 to the Oil Company for $224,741.63, realizing a profit of $121,874.40, which it reported on its income tax return for 1925. (3) In 1931 the Investment Company acquired the Godfrey lease in Gregg County, Texas, for $25,000 and sold it to the Oil Company for $123,000, realizing a profit of $98,000, which it reported on its income tax return for 1931. The five year option which petitioner H. F. Wilcox obtained for the purchase of 15,000 shares of the common stock of the Oil Company, as set out in the aforesaid decree, had no fair market value during 1939. The petitioners took a deduction of $54,342.94 on their income tax return for 1939. The respondent, in determining the deficiency, disallowed said deduction in its entirety, with the following statement: "* * * The above-mentioned payments were made by you in order to avoid these corporations being placed in receivership, and to otherwise protect your investment therein. Such payments were not made as a result of a transaction entered into for profit, and were not ordinary and necessary business expenses." Opinion The question to be decided in this proceeding is whether the petitioners are entitled to a claimed deduction of $54,342.94, *404 either as an expense or as a loss, upon their joint income tax return for 1939. The amount claimed consists of $15,000 and the cost value ($39,189.10) of 15,000 shares of common stock of the Wilcox Oil & Gas Company, said cash and stock having been turned over to the Oil Company by H. F. Wilcox in 1939 in full settlement of a suit for an accounting in which Wilcox was one of the defendants, and legal expense of $153.84, incurred by Wilcox in connection with said suit. The applicable statutory provisions are set forth in the margin. [1]
*405 Since the formation of the Oil Company, in 1918, H. F. Wilcox has been its president and a director. The facts do not disclose the number of shares of Oil Company stock personally owned by Wilcox. The Wilcox family owned a substantial amount until the organization of the Investment Company in 1923, when the Wilcox family, which includes petitioners, apparently exchanged its stock in the Oil Company for stock in the Investment Company. The Investment Company was succeeded in 1932 by the Apex Company, also a Wilcox family corporation. From 1923 until December 31, 1938, it is clear that Wilcox personally owned no stock in the Oil Company. There is no evidence as to how Wilcox obtained the 15,000 shares of Oil Company stock, involved in the settlement, or that he owned them at the time they were transferred to the Oil Company. He had none at the beginning of the year. It would seem that the 15,000 shares belonged to Apex Company. The compromise was based primarily upon three transactions between the Investment Company, which was dissolved in 1932, and the Oil Company. At no time did the defendants admit any liability on account of said transactions and the petitioners herein deny that *406 the acts complained of by the plaintiffs' in the stockholders' suit were contrary to the legal and equitable rights of the Oil Company. It is axiomatic that one who seeks the benefit of a tax deduction must bring himself squarely within the statutory language, New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934); Burnet v. Houston, 283 U.S. 223 (1931). This, in our opinion, the petitioners have failed to do. No one of the several statutory provisions sought to be relied upon will, under the facts presented to us, support an allowance of the claimed deduction. At the outset it is apparent that neither section 23(a)(1) nor section 23(e)(1) of the Code, as amended, can apply, because both relate to deductions in connection with a taxpayer's trade or business. Petitioners' only witness testified, and we have found as a fact, that the settlement which gave rise to the payments now sought to be deducted was based primarily upon three transactions between the Oil Company and the Investment Company, to which H. F. Wilcox was not a party. There was no evidence to show to what extent the settlement was predicated upon transactions *407 with the Oil Company to which Wilcox himself may have been a party. However, even if the settlement was partially predicated upon transactions directly between the Oil Company and Wilcox, no evidence has been submitted which would establish that Wilcox was engaged in any trade or business out of which the claimed deductions arose. See Higgins v. Commissioner, 312 U.S. 212 (1941); Deputy v. du Pont, 308 U.S. 488 (1940). The payments in question proximately resulted, under the facts, from the business of the Investment Company and not from any business of petitioners. Compare Kornhauser v. United States, 276 U.S. 145 (1928); Deputy v. du Pont, supra. Nor were the claimed deductions "ordinary and necessary", within the meaning of section 23 (a) (1). It was not "ordinary and necessary" for Wilcox to have entered into, and to have made payments pursuant to, a settlement premised upon allegedly wrongful acts committed by the Investment Company, a separate legal entity, Deputy v. du Pont, supra;Welch v. Helvering, 290 U.S. 111; *408 Hales-Mullaly, Inc. v. Commissioner, 131 Fed. (2d) 509 (C.C.A., 10th Cir., 1942); W. F. Young, Inc. v. Commissioner, 120 Fed. (2d) 159 (C.C.A., 1st Cir., 1941); A. Giurlani & Bro., Inc. v. Commissioner, 119 Fed. (2d) 852 (C.C.A., 9th Cir., 1941). And even if the settlement was partially premised upon alleged acts of Wilcox himself, as to which we have no evidence, it is still not established that it was "necessary" for him to enter into the settlement. Wilcox denies in the present proceeding that the acts complained of in the stockholders' suit were contrary to the legal and equitable rights of the Oil Company. The reasons which prompted Wilcox to enter into the settlement are unexplained. We cannot assume that Wilcox was the only one personally obligated to settle and pay in the absence of evidence to that extent. Derelictions and misconduct were charged against all defendants in the suit settled. On the contrary, it appears more consistent with the evidence that the settlement was entirely voluntary on his part. The fact that an obligation to pay arose out of the court's decree is not *409 sufficient. "It is the kind of transaction out of which the obligation arose and its normalcy in the particular business which are crucial and controlling." Deputy v. du Pont, supra, at 496. To obtain the benefit of section 23(a)(2), in addition to establishing that an expense was "ordinary and necessary", the taxpayer must prove that it was paid or incurred "for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income." See Aldus C. Higgins, 2 T.C. 948. This the petitioners have not shown. Losses are not deductible under section 23(e) of the Code if "compensated for by insurance or otherwise." The record does not explain the circumstances under which Wilcox obtained the 15,000 shares, but petitioners' reply brief indicates that they were obtained from the Apex Company. Whether by purchase or otherwise does not appear. He was president of the Apex Company which owned the stock of the Wilcox family. If he was acting for Apex the loss, if any, would be that of Apex. If he was acting on his own behalf the transfer of the shares and $15,000 *410 inured, at least in part, to the benefit of Apex and its other stockholders and he would have a right of contribution from such others. Under such circumstances he would have no right to a loss deduction under section 23(e). Petitioners have wholly failed to prove a loss to Wilcox personally for which he could not be reimbursed either in whole or in part. Another factor which prevents the allowance of a loss deduction either as a business loss (section 23(e)(1)) or as a loss incurred in a transaction entered into for profit (section 23(e)(2)) is that the income derived from the three transactions which principally prompted the settlement was reported and the tax thereon paid by the Investment Company and not by Wilcox. We are unable to see how a compensating loss deduction with respect to income of another could be made available to Wilcox. In a situation such as this, the claimed loss deduction should bear some direct relation to income which previously has borne its proper tax burden, Tiscornia v. Commissioner, 95 Fed. (2d) 678 (C.C.A., 9th Cir., 1938); J. Noble Hayes, 7 B.T.A. 936. A taxpayer cannot lose what was never *411 his. The petitioners' failure to prove a direct relation between the claimed loss and corresponding income previously reported by petitioners prevents the allowance of a loss deduction, Burnet v. Houston, supra;Tiscornia v. Commissioner, supra; compare Burnet v. Clark, 287 U.S. 410 (1932); Salmon v. Commissioner, 126 Fed. (2d) 203 (C.C.A., 2nd Cir., 1942). The petitioners having failed to prove that they are entitled to the claimed deduction, we approve the respondent's determination. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) EXPENSES. - (1) Trade or Business Expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * * * *
(2) Non-Trade or Non-Business Expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. * * * * *
(e) LOSSES BY INDIVIDUALS. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - (1) if incurred in trade or business; or (2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *↩