ELLIOTT R. CORBETT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 36737, 44087. Promulgated May 9, 1933.

*Roscoe C. Nelson, Esq.,* for the petitioner.
*O. W. Swecker, Esq., A. N. Williams, Esq.,* and *Seth B. Stockton, Esq.,* for the respondent.

OPINION.

MARQUETTE: Petitioner contends that the amount he paid to Emma L. Corbett each year was merely the transmission of income from an estate, under a testamentary provision. He says that the amount so paid never was income to him in reality, that he was merely a conduit for the transmission of the money from the estate to the legatee. That view is not sustained by the facts. It clearly appears that in 1912 Emma L. Corbett wholly relinquished any rights she might have against the estate, and consented to the distribution of the remaining corpus and to the closing of the administration. That consent was the consideration given by her for a promise by the petitioner and his brothers to pay her a fixed monthly income. That the amount to be paid coincided with the amount bequeathed to her under the will does not alter the fact that a contract was made and carried out by which petitioner and his brother took the property free of the charge against the income. The contract superseded the will and the latter then passed out of consideration. Had petitioner and his brothers failed to make the agreed payments they would have been liable not for breach of trust as fiduciaries, but for damages for breach of contract as individuals. In our opinion the payments in question constituted capital expenditures, and are not deductible in computing taxable net income. *Robert L. Scott*, 9 B.T.A. 955; affd., 29 Fed. (2d) 472.

In 1923 petitioner sold for $10 corporate stock for which he had paid its par value, $18,000, and in 1925 he again sold for $10 stock in the same corporation for which he had paid par, $27,500. The respondent concedes that a deductible loss was sustained by the sale in 1923, but contends that in that year the petitioner determined the stock to be worthless and therefore no loss should be allowed in respect of the sale in 1925.

That conclusion is not justified by the evidence. Although conditions affecting the sheep and wool industries were not good, many of the Basin Wool Co.'s borrowers had shown improvement. The market price of wool had more than doubled and the outlook for the company in 1923 was by no means hopeless. The large loan to R. W. Stanfield gave promise as late as July 1924 of working out successfully. Not until the fall of 1925 was it known that the loan could not be collected. Petitioner testified that in 1923 he did not know the value of the Basin Wool Co.'s stock and that his sale of the stock in that year was purely for the purpose of taking an income tax loss. The fact that he sold stock for a nominal sum, under the circumstances set forth, does not prove that petitioner had determined the stock to be worthless at the time. And in our opinion it was not worthless in 1923. We think that the loss on petitioner's sale of the Columbia Basin Wool Co.'s stock in 1925 was deductible for that year.

The last question is whether petitioner may carry over to 1924 a net loss resulting from the sale of his Basin Wool Co. stock in 1923. The Revenue Act of 1921, so far as here pertinent, provides:

SEC. 204. (a) That as used in this section the term "net loss" means only net losses resulting from the operation of any trade or business regularly carried on by the taxpayer * * *.

(b) If for any taxable year beginning after December 31, 1920, it appears * * * that any taxpayer has sustained a net loss, the amount thereof shall be deducted from the net income of the taxpayer for the succeeding taxable year * * *.

Under the statute, the petitioner is entitled to carry over his net loss in 1923 only if that loss was sustained in a trade or business regularly carried on by him. *Oscar E. Rehm*, 16 B.T.A. 1045; *R. P. Clark*, 19 B.T.A. 859.

It appears from the record that petitioner was the vice president of a bank in which he and his brothers owned a 40 percent interest. He devoted his business days to the interests of the bank, but also consulted with his brother nearly every day concerning all their investments. Petitioner's individual investments included the stock here in question. It is apparent from the record that petitioner changed his investments from time to time and his investment transactions averaged $164,000 per year from 1910 to 1925. But it nowhere appears that petitioner regularly engaged in buying and selling securities, nor that in 1923 he engaged in any stock transaction except the one here in question. The record does not indicate that petitioner was engaged in directing or managing the business conducted by the corporation whose stock he sold.

The situation here strongly resembles that of *Alfred M. Bedell*, 9 B.T.A. 270; affd., 30 Fed. (2d) 622. That taxpayer was a dealer

in ladies' wear. He also bought securities on the market not as a broker, but on his own account. Some securities he bought outright, some on margin. For the year 1920 he claimed a net loss deduction resulting from the sale of securities in 1919. In sustaining the Commissioner's disallowance of the deduction, we said:

The petitioner starts with a presumption against him. To prove that he was regularly engaged in 1919 in carrying on the business of buying and selling, exchanging and otherwise dealing in bonds and stocks, he testified in a general way as to what he had done in "1919 and the several preceding years." But he never limited his testimony so that it would apply specifically to the year 1919. * * *

On cross-examination he was asked to identify his income-tax return for the calendar year 1919. The return was then offered in evidence by the respondent without any objection by the petitioner. This return shows but one profitable sale of a stock or a bond during the year. The bond sold was purchased in 1916. * * *

A loss of $254,357.95 was claimed as shown by an attached schedule a copy of which appears in our findings of fact. * * * The petitioner also testified on cross-examination that the stocks and bonds shown on the schedule attached to the return were owned by him on March 1, 1913, and were turned over by him to the Bank of Manhattan, which sold them for his account.

It seems to us that the facts thus developed on cross-examination seriously challenge the direct testimony of the petitioner in regard to his 1919 stock and bond purchases and sales. If in 1919 he was doing an active business with brokers, if he was buying and selling stocks and bonds, where is this reflected in his return? The sales at a loss were all made through a bank. These securities had all been held for six years at least. * * * He did not mention one specific purchase or sale of stocks or bonds made by him during the year. The only other witness did not give any more satisfactory testimony on this point. The petitioner has not sustained his burden, his proof on this point is not convincing and fails to give us sufficient justification for changing the Commissioner's determination. * * *

And in its affirming opinion, the Circuit Court of Appeals stated:

A trader on an exchange, who makes a living in buying and selling securities or commodities, may be said to carry on a "business"; a person who frequents brokers' offices and continually dabbles in real estate is conceivably quite different. Most men who have capital change their investments, and may speculate all the time; we should hardly call this a business, though the line is undoubtedly hard to draw.

Again, in *R. P. Clark*, 19 B.T.A. 859, where the taxpayer was the majority stockholder and president of a corporation whose stock he sold at a loss, we held that the loss arose from an occasional transaction and not in a trade or business regularly carried on. The decision was reversed, 59 Fed. (2d) 1031, on the ground that as the taxpayer devoted all his time to the management of the corporation the sale of his stock in the company could not be separated from the regular course of business of which it was a part, and that the sale could not be considered a wholly independent transaction. The

appellate court was reversed and this Board's decision sustained by the Supreme Court on December 12, 1932, *Burnet* v. *Clark*, 287 U.S. 410.

We cannot perceive any material distinction between the conditions now before us and those in the cases above cited. We conclude, therefore, that petitioner's sale of the Basin Wool Co.'s stock in 1923 did not result in a loss sustained in a trade or business regularly carried on. Hence, he is not entitled, under the Revenue Act of 1921, to carry forward a net loss in computing his 1924 income tax.

As indicated earlier in this opinion, petitioner's taxable income for 1925 should be increased by the $4,000 paid under contract to Emma L. Corbett in that year, and a deduction of $27,490 should be allowed for loss on the sale of corporate stock.

> *Decision will be entered under Rule 50 in Docket No. 36737. Decision will be entered for the respondent in Docket No. 44087.*