James H. Browning v. Commissioner.
James H. Browning v. Commissioner
Docket No. 12277.
United States Tax Court
1948 Tax Ct. Memo LEXIS 154; 7 T.C.M. (CCH) 394; T.C.M. (RIA) 48114; June 25, 1948
*154 The decedent, who died in 1911, bequeathed an annuity of $2,500 a year to his divorced wife, payable so long as she did not remarry. He placed a portion of his stockholdings in trust for his two nephews, who were also equal legatees of a residuary estate consisting in part of his remaining stock interests. The two nephews, one of whom is petitioner, qualified as administrators of the estate in 1918 following the death of the executor, and in 1923 they had the entire lot of stock issued to themselves as legatees. Petitioner and his brother paid the annuity from 1915 until the death of the latter in 1935, after which time petitioner paid the entire annuity. In 1939 decedent's divorced wife entered into an agreement with petitioner and with the executrix of his brother's estate whereby decedent's estate was allowed to be formally closed and petitioner in return undertook personally to pay the annuitant the sum of $2,500 per year. Held, petitioner's payments in 1942 and 1943 are not excludable from gross income under section 22 (b) (3), or deductible therefrom under section 23 (a) (2), I.R.C.
Theodore Witkin, C.P.A., for the petitioner. Whitfield J. Collins, Esq., for the respondent. *155 ARUNDELL
Memorandum Findings of Fact and Opinion This case involves an income and victory tax deficiency for petitioner's taxable year ended December 31, 1943, in the amount of $2,468.28. Certain minor adjustments to 1942 and 1943 income are not in issue, that of the earlier year being adjusted pursuant to the provisions of the Current Tax Payment Act of 1943. The sole question to be decided is whether payments by petitioner of $2,500 in each of the years 1942 and 1943 are proper exclusions from gross income under section 22 (b) (3), Internal Revenue Code, or are deductible therefrom under section 23 (a) (2) of the Code. Findings of Fact James H. Browning, petitioner, is an individual residing at Great Neck, Long Island, New York. His tax returns for 1942 and 1943 were filed with the collector of internal revenue for the second district of New York. Petitioner is one of the legatees under the will of Joseph P. Topping, who died on or about August 17, 1911. The will was admitted to probate by the Surrogate's Court, New York County, on or about October 26, 1911, and letters testamentary were issued to the decedent's brother, Herbert W. Topping, who duly qualified as executor. The will *156 of Joseph P. Topping provided (a) for the payment of debts and expenses; (b) the payment of an annuity of $2,500 a year to Lillian O. Topping (his divorced wife), payable in equal monthly installments as long as she remained unmarried, and (c) the creation of a trust consisting of 200 shares of the capital stock of a corporation known as "Topping Brothers," the income therefrom to be payable to the decedent's nephews, Gilbert Browning and petitioner, during the lifetime of his latter's death "the said two hundred shares of stock are to be conveyed and assigned unto the said GILBERT BROWNING AND JAMES BROWNING in absolute ownership in equal shares." Finally, the two nephews were named as equal residuary legatees, and Herbert W. Topping was appointed as executor and trustee. The decedent's brother died on or about April 17, 1915. Letters of administration, C.T.A., were granted on or about May 3, 1918, to petitioner and his brother, Gilbert Browning, who duly qualified as administrators of the estate of Joseph P. Topping. Joseph P. Topping at the time of his death owned 590 shares of the capital stock of Topping Brothers, hereinafter sometimes referred to as the corporation, which represented *157 50 per cent of the entire authorized and issued capital stock of the corporation. On November 7, 1923, half of this stock (295 shares) was transferred to petitioner and the other half was transferred to Gilbert Browning individually. Thereafter, the dividends accruing on this stock were credited by the corporation to the individual accounts of the transferees. Gilbert Browning died on or about September 18, 1935. Letters testamentary under his will were issued by the Probate Court, District of Greenwich, Connecticut, to his widow, Marjorie S. Browning (now Mrs. Selwyn Bywater), who duly qualified as executrix. In March and April, 1939, the 295 shares of the Topping Brothers stock, which were owned by Gilbert Browning, were transferred to his two daughters, 148 shares to Alice Browning and the remaining 147 shares to Jean Browning. From the time of the death of Joseph P. Topping in 1911, to and including December 31, 1943, the sum of $2,500 was paid annually in monthly installments to Lillian O. Topping by the corporation, pursuant to the successive requests of the executor, the administrators and the legatees of the estate of Joseph P. Topping. Such payments were charged by the corporation *158 against the accounts of petitioner and Gilbert Browning, equally, to and including the fifth day of September, 1935, and thereafter the entire sum of $2,500 annually was charged against the account of petitioner. Soon after the death of Gilbert Browning, efforts were made to close the estate of Joseph P. Topping in order to close the estate of petitioner's brother. A document entitled "Release of Administrators" and dated February 18, 1937, was signed by Marjorie S. Browning, as executrix of the last will and testament of Gilbert Browning, legatee and co-administrator, by petitioner as legatee and co-administrator, and by Lillian O. Topping as legatee. The instrument was executed by Marjorie S. Browning on February 18, 1937, by petitioner on January 25, 1939, and by Lillian O. Topping on February 10, 1939. The latter was induced to sign the release on the assurance of petitioner that he would personally continue to pay her the annuity of $2,500 per year. The release contained the following provision: "WHEREAS, The undersigned have settled with said administrators all matters and things whatsoever relating to said estate and to all claims and interest therein, and have received the *159 amount of their respective claims and distributive shares so far as there were sufficient assets to pay the same, the receipt whereof we hereby severally acknowledge, and in consideration of a mutual agreement to waive a judicial accounting, we the undersigned creditors and persons entitled to distributive shares do, and each of us acting individually and without regard to the execution of these presents by the others, does hereby remise, release and forever discharge the said administrators, James H. Browning, Gilbert Browning, (now deceased), the Estate of Gilbert Browning, deceased, and the Royal Indemnity Company, the sureties upon the official bond of said administrators, of and from any and every claim, demand, action and cause of action, account, reckoning and liability of every name and nature for and on account of any and every matter and thing whatsoever arising from or in any manner relating to or connected with the estate of said deceased or with the administration thereof, and we and the said administrators, who also subscribe these presents severally, request the Surrogate of said County to record this instrument as required by law." Shortly after the death of Gilbert *160 Browning, petitioner talked with his widow, executrix of her husband's estate, and stated that he would pay the full amount of the $2,500 annuity to Lillian O. Topping out of his own funds. At that time he requested her support of his management of the business. Thereafter, he personally paid the annuity to Lillian O. Topping while Marjorie S. Browning during the period from 1935 to 1946 voted the stock generally in the support of petitioner's management policies. Petitioner held the following offices in Topping Brothers: director from 1912 to date; vice-president from 1912 to 1935; president from 1935 to 1946, and general manager from 1922 to 1946. During each of the taxable years 1942 and 1943 petitioner received an annual salary of $20,000 from the corporation. Dividends were declared on the corporate stock owned by petitioner in the amount of $11,800 for each of the two years. Petitioner included the above salaries and dividends in his taxable income for the years 1942 and 1943 but deducted the $2,500 annuity payments from his gross income for each year. These deductions were disallowed by respondent and a deficiency in income and victory tax was accordingly determined. Opinion *161 ARUNDELL, Judge: A brief resume of the facts, we think, will prove helpful. The decedent, Topping, died in 1911 and by his will provided for an annuity of $2,500 a year to his divorced wife; placed in trust 200 shares of stock in Topping Brothers for the benefit of his two nephews - petitioner and his brother Gilbert - the shares to be paid to them when the named trustee died; and the residue of the estate, consisting of 390 shares of Topping Brothers stock, was left to the same two nephews. In 1915 the trustee died and petitioner and his brother Gilbert were named as administrators of the decedent's estate. In 1923 the 590 shares - the 200 shares in the trust and the 390 shares constituting the residue of the estate - were distributed equally to petitioner and his brother without court order directing this action. During the period from 1915 to the date of Gilbert's death in 1935, each brother paid $1,250 a year to the annuitant. In 1939 an agreement was entered into by petitioner, the widow of his brother Gilbert, who was executrix of the latter's estate, and the annuitant, whereby the estate of the decedent was permitted to be finally closed and the administrators discharged without *162 the necessity of an accounting, and by this agreement the annuitant released her claim against the estate and in effect ratified the earlier distribution of the property of the estate to the residuary legatees. The annuitant's discharge of the estate from its obligation to continue to pay her the annuity was given in consideration of petitioner's promise and agreement to thereafter personally pay the annuitant $2,500 per year. The question raised is whether the amounts paid by petitioner under his contract obligation, $2,500 in 1942 and also in 1943, are excluded from his taxable income under section 22 (b) (3)[1] *163 or are deductible from his gross income for each year under section 23 (a) (2)[2] of the code. The facts herein are very similar to those found in Elliott R. Corbett, 28 B.T.A. 46. There the decedent bequeathed $1,000 per month to his widow, payable out of the income derived from real estate which was devised to three sons as residuary legatees. Nine years after death the brothers agreed to pay the annuity to their mother in consideration of her release of the estate and the executors from *164 all claims. The estate was thereupon closed and the property was distributed. We held that the payments to the widow under the contract were in the nature of capital expenditures and not deductible in computing taxable net income. In our opinion we stated: "It clearly appears that in 1912 Emma L. Corbett wholly relinquished any rights she might have against the estate, and consented to the distribution of the remaining corpus and to the closing of the administration. That consent was the consideration given by her for a promise by the petitioner and his brothers to pay her a fixed monthly income. That the amount to be paid coincided with the amount bequeathed to her under the will does not alter the fact that a contract was made and carried out by which petitioner and his brother took the property free of the charge against the income. The contract superseded the will and the latter then passed out of consideration. Had petitioner and his brothers failed to make the agreed payments they would have been liable not for breach of trust as fiduciaries, but for damages for breach of contract as individuals. In our opinion the payments in question constituted capital expenditures, and are *165 not deductible in computing taxable net income." Petitioner contends, however, that Corbett, supra, is not controlling because the law applicable to the taxable years herein did not apply to the taxable years there involved. We are unable to see why any different result would follow under the new statutory provisions set out in Footnote 1. In 1939 the annuitant gave up all claim of right against the estate and accepted in lieu thereof the contract obligation of petitioner to pay her $2,500 per year. Petitioner then became the absolute owner of the 295 shares of stock in Topping Brothers, and all subsequent dividends belonged to him and were taxable to him in toto. It may well be that if Mrs. Topping had continued to hold her claim against the Topping stock of the estate, that section 22 (b) (3) would warrant an exclusion of the sum so paid her from the dividends on the stock held in petitioner's name. Frank R. Malloy, 5 T.C. 1112. But the basis for such action disappeared when she released the estate and accepted in lieu of any claim against it petitioner's contract liability to pay her $2,500 per year. Nor would the $1,250 paid as the primary liability on the part of petitioner *166 be allowable as a deduction from gross income under section 23 (a) (2) as petitioner claims in the alternative. As we have already pointed out, the sum so paid was not an ordinary and necessary expense but was a capital expenditure. Elliott R. Corbett, supra. Petitioner further argues that the $1,250 - half of the annuity payment - paid by his brother prior to his death and thereafter assumed by petitioner should be deductible under section 23 (a) (2). He bases this contention on the claim that his undertaking in this particular was made in consideration of an agreement of Marjorie S. Browning, as executrix, to vote the corporate stock in support of petitioner's management of Topping Brothers. We have found that petitioner suggested this course to his brother's widow but have not found that she in fact entered into such an agreement. We are constrained to reach this conclusion in view of the stipulation by the parties that she would have denied making the agreement had she testified, coupled with the general circumstances surrounding the offer by petitioner. In any event, we do not believe that a sum paid for such a purpose would constitute an ordinary and necessary expense paid *167 or incurred for the production or collection of income, or for the management, conservation, or maintenance of the property held for the production of income. Certainly this record does not warrant a finding that the expenditure was necessary to "the production of income," whether that income be petitioner's salary as president of the corporation or income in the way of dividends on his shares. Nor are we convinced that it is ordinary to pay a stockholder, and particularly a stockholder acting in a fiduciary capacity, for her support in maintaining petitioner in his position as president of the corporation. By the same token, we are of the opinion that the sum paid to Mrs. Topping does not constitute an ordinary and necessary expense paid or incurred in the management, conservation, or maintenance of petitioner's property. Commissioner v. Heide, 165 Fed. (2d) 699. While petitioner has not asked for the deduction under section 23 (a) (1) as an ordinary and necessary expense in carrying on his business as president of the corporation, there would appear to be no reason why a different treatment should be accorded the payment as a business expense. Decision will be entered under Rule *168 50. Footnotes
1. SEC. 22. GROSS INCOME. * * *
(b) Exclusions from Gross Income. - The following items shall not be included in gross income and shall be exempt from taxation under this chapter: * * *
(3) Gifts, Bequests, Devises, and Inheritances. - The value of property acquired by gift, bequest, devise, or inheritance. There shall not be excluded from gross income under this paragraph, the income from such property, or, in case the gift, bequest, devise, or inheritance is of income from property, the amount of such income. For the purposes of this paragraph, if, under the terms of the gift, bequest, devise, or inheritance, payment, crediting, or distribution thereof is to be made at intervals, to the extent that it is paid or credited or to be distributed out of income from property, it shall be considered a gift, bequest, devise, or inheritance of income from property. 2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - * * *
(2) Non-trade or Non-business Expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.↩