BURNET, COMMISSIONER OF INTERNAL REVENUE, *v.* CLARK.

No. 180.  Argued November 14, 1932.—Decided December 12, 1932.

*Assistant Attorney General Youngquist,* with whom *Solicitor General Thacher,* and *Messrs. Whitney North Seymour, Sewall Key,* and *John H. McEvers* were on the brief, for petitioner.

*Mr. William S. Hammers* for respondent.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

Respondent Clark's income tax return for 1921 showed net loss exceeding $17,000; for 1922 net loss of about $5,000. He claimed these should be deducted from gains reported for 1923, under § 204 (a) and (b),[1] Revenue

---

[1] Revenue Act, 1921: " Sec. 204 (a). That as used in this section the term ' net loss ' means only net losses resulting from the operation of any trade or business regularly carried on by the taxpayer (including losses sustained from the sale or other disposition of real estate, machinery, and other capital assets, used in the conduct of such trade or business); and when so resulting means the excess of the deductions allowed by section 214 or 234, as the case may be, over the sum of the following: (1) The gross income of the taxpayer for the taxable year, (2) the amount by which the interest received free from taxation under this title exceeds so much of the interest paid or accrued within the taxable year on indebtedness as is not permitted to be deducted by paragraph (2) of subdivision (a) of section 214 or by paragraph (2) of subdivision (a) of section 234, (3) the amount by which the deductible losses not sustained in such trade or business exceed the taxable gains or profits not derived from such trade or business, (4) amounts received as dividends and allowed as a deduction under paragraph (6) of subdivision (a) of section 234, and (5) so much of

Act of 1921, c. 136, 42 Stat. 227, 231. The Commissioner of Internal Revenue ruled otherwise and the Board of Tax Appeals approved. The Court of Appeals, District of Columbia, reversed the Board's action. [61 App. D. C. 217; 59 F. (2d) 1031.] The matter is here upon certiorari.

From 1899 until 1922 respondent was closely connected with the Bowers Southern Dredging Company which did river and harbor improvement work, dredging and jetty building. He was majority stockholder, active head, after 1905 president, and devoted himself largely to its affairs. During 1921 and 1922 he was a member of three partnerships similarly engaged and often associated with the Bowers Company. Also, he owned and held as investments shares of a number of corporations. He was not in the investment business.

After 1917 the Bowers Company encountered continuous financial difficulties. To protect his interest therein, at sundry undisclosed times respondent endorsed the company's obligations to the banks. In 1921 a creditor's committee took charge and thereafter respondent conducted the corporate affairs as managing director. A new concern took over the entire assets and business in 1922.

Because of his endorsements respondent paid $68,000 for the Company during 1921. He claimed and was al-

---

the depletion deduction allowed with respect to any mine, oil or gas well as is based upon discovery value in lieu of cost.

"(b) If for any taxable year beginning after December 31, 1920, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be deducted from the net income of the taxpayer for the succeeding taxable year; and if such net loss is in excess of the net income for such succeeding taxable year, the amount of such excess shall be allowed as a deduction in computing the net income for the next succeeding taxable year; the deduction in all cases to be made under regulations prescribed by the Commissioner with the approval of the Secretary."

lowed to deduct the sum thus lost upon his return for that year. During the same year he also lost $9,500 through sale of the corporation's stock and in 1922 he sustained a similar loss amounting to $92,500. For both these sums appropriate deductions were permitted.

After considering all the circumstances, the Commissioner held respondent's losses did not result "from the operation of any trade or business regularly carried on by the taxpayer," and could not be deducted from gains of succeeding years. The Board of Tax Appeals approved. Among other things, it said—

"In order for the losses here involved to be deductible in determining taxable income for 1923, they must be net losses resulting from the operation of a trade or business regularly carried on by the petitioner and not from isolated and occasional transactions. . . .

"With respect to the loss of $68,000 resulting from the petitioner's endorsement of the Bowers Company notes, he testified that in endorsing the notes he was seeking to protect his investment in its stock. Aside from endorsing an undisclosed number of notes of this company there is nothing in the record to indicate that acting as endorser or guarantor constituted a business or trade with the petitioner. So far as the record shows these were the only notes ever endorsed by the petitioner for the Bowers Company or for any other company or person. From the facts in the case we are of the opinion that the loss did not result from the operation of a trade or business regularly carried on by the petitioner but resulted from isolated or occasional transactions. . . .

"With respect to the remaining losses resulting from the sale of the Bowers Company stock in 1921 and 1922, we do not think the petitioner's ownership of stock in a number of corporations which he held as an investment during 1921 and 1922 or the sale of some of such stock in those years constituted a business or trade regularly

carried on by him. As to his being in the investment business, the petitioner testified as follows: ' Q. Would you say you were in the investment business, Mr. Clark? ' 'A. No, sir.'

" Since the petitioner was not in the investment business or engaged in the business of a dealer in securities, we think the losses resulting from the sale of the Bowers Company stock in 1921 and 1922 constituted losses arising from occasional or isolated transactions and not from the operation of a business regularly carried on. . . ."

In support of the contrary view the District Court of Appeals said:

" It appears that during the times in question appellant was engaged in regularly carrying on the business of dredging, operated by a corporation of which appellant was principal owner and active directing head, and to which he devoted all of his time and energies. Appellant accordingly was necessarily concerned with the financial conditions and difficulties which beset the business, and he was compelled by circumstances to indorse the company's notes in order to supply it with necessary operating funds. This action was not isolated or occasional but became part of the operation of the business, and helped to carry it on. It is true that appellant did not regularly carry on a business of indorsing notes for profit, but his indorsement of the company's notes was part of the business regularly carried on for the company. It is also true that appellant was not regularly engaged in the business of selling corporate stocks, but the transactions of that character appearing in the record can not be separated from the regular course of business of which they were part, and must not be considered as if wholly independent transactions."

We agree with the Commissioner and the Board of Tax Appeals. The judgment below must be reversed.

The respondent was employed as an officer of the corporation; the business which he conducted for it was not his own. There were other stockholders. And in no sense can the corporation be regarded as his *alter ego,* or agent. He treated it as a separate entity for taxation; made his own personal return and claimed losses through dealings with it. He was not regularly engaged in endorsing notes, or buying and selling corporate securities. The unfortunate endorsements were no part of his ordinary business, but occasional transactions intended to preserve the value of his investment in capital shares.

A corporation and its stockholders are generally to be treated as separate entities. Only under exceptional circumstances—not present here—can the difference be disregarded.

*Reversed.*