ALEXANDER M. BING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 59590. Promulgated April 19, 1934.

*Lewis M. Isaacs, Esq.*, for the petitioner.
*Ralph E. Smith, Esq.*, for the respondent.

Morris: This proceeding is for the redetermination of a deficiency in income tax of $7,624.80 for the calendar year 1929, presenting for consideration the respondent's allegedly erroneous disallowance of a claimed deduction of $35,000, representing an amount paid by this petitioner in connection with the organization and financing of the A. M. Bing & Son Realty Corporation, as an ordinary and necessary business expense.

The petitioner, appearing here individually, is a resident of New York City.

In or about the month of December 1928, the Leonard S. Gans Co., engaged in the real estate brokerage business in the city of New York, duly licensed to conduct such business in the State of New York, through Leonard S. Gans of that company, brought the petitioner into contact with the Goldman Sachs Trading Co., for the purpose of negotiating a deal whereby funds of the Trading Co. should be employed in real estate operations.

Following upon such introduction, the petitioner negotiated an agreement with the Goldman Sachs Trading Co. providing for the formation of a corporation to enter into certain real estate operations. The Leonard S. Gans Co. participated in the preliminary conversations and negotiations. The agreement between the petitioner and the Trading Co. was consummated on or about February 4, 1929, and a corporation known as the A. M. Bing & Son Realty Corporation was organized with a paid-in capital of $10,000, against which 1,000 shares of no par value stock were issued, 500 thereof being subscribed for by the petitioner, and 500 by the Trading Co., each paying $5,000 therefor. The Trading Co. advanced to the Corporation $5,000,000, and the corporation executed a series of notes for the face amount thereof, repayable with interest over a period ranging from five to ten years from the date of advance. Simultaneously the petitioner agreed to devote time and attention to the operations of the company, and individually guaranteed the Trading Co. against any loss on the notes up to an aggregate of 25 percent of the face thereof.

After the consummation of the agreement, the petitioner paid to the Leonard S. Gans Co. the sum of $35,000 (one payment of $15,000 being made on February 19, 1929, and the balance of $20,000 being paid on March 26, 1929), in full satisfaction for the services rendered in the above described transaction.

The payment to the Leonard S. Gans Co. by the petitioner was not shared in by the Trading Co., nor charged against the A. M. Bing & Son Realty Corporation. This payment was made by the petitioner, and neither directly nor indirectly was he reimbursed by

the A. M. Bing & Son Realty Corporation, the Trading Co., or anyone else, for such payment.

At the time of the negotiations with the Goldman Sachs Trading Co., the petitioner was, and had been for upwards of 25 years, actively and extensively engaged in the real estate business in the city of New York. He paid the commission personally, charging the item in his books as an expense in the ordinary course of his business, and not as part of the cost of the stock of A. M. Bing & Son Realty Corporation.

The petitioner accepted the services of the Leonard S. Gans Co. with the understanding that they were to be paid for if successful; but there was no agreement between the petitioner and Leonard S. Gans prior to the consummation of his agreement with the Trading Co. as to the compensation to be received by the Leonard S. Gans Co. should the transaction be closed. The amount paid to the Leonard S. Gans Co. was fixed by the petitioner with Leonard S. Gans after the consummation of the agreement with the Goldman Sachs Trading Co.

The certificate of incorporation of the A. M. Bing & Son Realty Corporation was filed on February 5, 1929. The organization meeting of the corporation was held on February 8, 1929. The stock was issued and paid for on February 11, 1929. The first advance on account of the $5,000,000 by the Trading Co. to the A. M. Bing & Son Realty Corporation was made on February 19, and amounted to $500,000. The aggregate payments by the Trading Co., making up the total of $5,000,000, were made from time to time during the year, the last payment, completing the aggregate of $5,000,000, being $335,000, paid on February 27, 1930.

The petitioner filed an individual income tax return for the calendar year 1929, and in that return he deducted $35,000 as " commissions." This deduction the respondent disallowed for the reason, as stated in his deficiency notice, that it was " a capital expenditure to be added to cost of stock of the C. M. [A. M.] Bing and Son [Realty] Corporation and recovered upon final liquidation of the corporation."

In addition to the foregoing facts taken from stipulations entered into between the parties and other documentary evidence, the petitioner offered oral testimony, practically all of which duplicates matters already stipulated. One fact stipulated between the parties—the fact that the petitioner had, for a great many years, been actively and extensively engaged in the real estate business—should be supplemented by facts developed from such oral testimony showing that although he was so engaged it was through the medium of corporate enterprises and not in any individual or proprietary capacity. For instance, it is shown that his business embraced

the purchase and sale of real estate, the construction of buildings, the management of realty properties, etc., and that a separate corporation was organized for each of these separate enterprises and, furthermore, that whenever it became necessary to employ outside capital this was accomplished through some profit or loss sharing arrangement and that separate corporations were formed for participation in each of such transactions.

The petitioner testified that he was not engaged in the business of a promoter—nor was he engaged in the business of forming new corporations except where such became necessary in order to carry out the purposes of his other corporate interests.

Our sole question is whether or not the $35,000 payment by the petitioner to Gans, under the circumstances hereinbefore related, constituted an " ordinary and necessary " expense " paid or incurred during the taxable year in carrying on any trade or business " within the purview of section 23 of the Revenue Act of 1928.

.Two factors stand out boldly in this proceeding in opposition to the petitioner's cause. We know nothing of the private considerations that passed between the petitioner and Gans respecting the bringing together of the two factions, one seeking to borrow and the other seeking to lend; consequently we do not know why the petitioner, rather than the corporation, assumed the payment of this so-called commission. After all the corporation was the first to directly benefit by reason of the loan and, normally, would have been expected to bear any expenses necessitated thereby. Since, however, the petitioner, a stockholder of the corporation, bore the payment himself, such payment cannot be logically associated with the procurement of the loan itself, the loan having been made to the corporation, not to him, but must be classified consistently with the interests of the petitioner in the matter entirely apart from the corporate entity. Hence, it is reasonable to conclude from the circumstances, in view of the fact that the arrangements for the loan, the organization of the corporation, and the issuance of the capital stock were all bound up in a single plan, that the payment of the $35,000 was in furtherance of his ultimate plan to become a stockholder of the corporation and, therefore, that such payment was a part of the cost of so doing. It is also reasonable to assume that in making this large payment personally, without direct reimbursement from the corporation, he was confident that by becoming a stockholder the amount would be returned to him in dividends or through enhancement in the value of his stock. In other words we feel, as the respondent did, that the $35,000 payment was in no sense an expense, but was a part of the cost of his capital stock, for if such payment had not been made the chances are that the corporation

would never have come into being and he would never have become a stockholder therein.

The other factor to which we have referred is that, while the petitioner was engaged in the real estate business, the record shows not a single instance where he, on his own account, ever consummated or attempted to consummate a realty transaction. On the contrary the record shows that such realty transactions as were carried out were through the medium of corporate enterprises of which he no doubt was an officer and stockholder. But this cannot be said to be his, but the corporation's trade or business. *Burnet* v. *Clark*, 287 U.S. 410. So that, even if we were to classify this item as an expense rather than as a capital expenditure, we would be unable, on the record before us, to hold that it was incurred in a " trade or business " in which the petitioner was individually engaged. For the above and foregoing reasons we are of the opinion that the respondent's determination should be approved.

*Judgment will be entered for the respondent.*