## OMAHA NAT. BANK v. COMMISSIONER OF INTERNAL REVENUE.

No. 14058.

United States Court of Appeals
Eighth Circuit.

Aug. 17, 1950.

E. B. Crofoot Omaha, Neb. (Fraser, Connolly, Crofoot & Wenstrand Omaha, Neb. on the brief) for petitioner.

Francis W. Sams, Special Assistant to the Attorney General (Theron Lamar Caudle, Assistant Attorney General, and Ellis N. Slack and A. F. Prescott, Special Assistants to the Attorney General, on the brief) for respondent.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

THOMAS, Circuit Judge.

In his income tax return for 1944, L(odowick) F. Crofoot (since deceased) claimed a deduction in the amount of $10,407.90 for losses from business bad debts incurred in his trade or business under § 23(k)(1) 26 U.S.C.A. § 23(k)(1) of the Internal Revenue Code. The Commissioner disallowed the deduction on the ground that the losses claimed were non-business bad debts deductible as short-term capital losses under § 23(k)(4) of the Internal Revenue Code and determined a deficiency for the year 1944 in the amount of $4,520.68. Upon appeal to the Tax Court of the United States the determination of the Commissioner was affirmed on the ground that the petitioner's losses were not incurred in his trade or

business. The petitioner seeks a review here of the decision of the Tax Court.

The pertinent statute, 26 U.S.C.A. § 23 reads:

"§ 23. *Deductions from gross income.*

"In computing net income there shall be allowed as deductions

\* \* \* \* \* \*

"(k) *Bad debts.*

"(1) Debts which become worthless within the taxable year; \* \* \* This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection. .

\* \* \* \* \* \*

"(4) *Non-business debts.* In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term 'non-business debt' means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business."

The facts are not in dispute. It is conceded that the petitioner sustained the losses for which he claimed deductions. The question submitted to the Tax Court was whether the losses were incurred in his "trade or business" within the meaning of the statute.

The taxpayer was a practicing lawyer in Omaha, Nebraska, from 1888 until he retired in 1945. He had substantial investments in large corporations listed on stock exchanges and owned stock and took part in the management of one other local corporation. From November 3, 1941, to the time of his retirement, he was the controlling stockholder and an officer of Charles Rosso, Inc., a corporation engaged in the business of operating a restaurant and tavern in Omaha. During this period he devoted a portion of his time to the business of the restaurant.

He came in contact with one Charles Rosso on July 17, 1941, at which time he agreed to loan Rosso $7,000 to complete the construction of a restaurant. To secure the loan he took a mortgage on the restaurant and the ground on which it stood. The taxpayer afterward learned that Rosso did not have title to the real estate covered by the mortgage. In order, therefore, to protect the money loaned and to make sufficient funds available to finish construction of the building the business was incorporated under the title Charles Rosso, Inc., with an authorized capital of $40,000. Rosso was made president and the taxpayer secretary of the corporation. As funds were needed he invested in its capital stock until in 1942 he owned 333 shares for which he had paid $33,450.

The tavern was leased to Charles Rosso until May 1, 1942, the rental being the gross income less expenses and $200 a month salary to Rosso. After that date the corporation operated the business until 1943, the books of account being kept by his secretary in the taxpayer's law office and under his supervision.

From its inception the business was operated at a loss, and the taxpayer was unwilling to invest any more money in the stock of the corporation. However, between February 9, 1942, and September 22, 1943, he advanced to the corporation a total of $23,800 in 18 separate loans evidenced by promissory notes of the corporation. In March, 1942, Rosso sold his stock to the corporation and resigned as president, and the taxpayer was elected president. Early in 1943 the furniture and fixtures were sold, and in October of that year the building was rented for $300 a month. On December 29, 1944, all of the corporate assets were sold for $15,000, including the building, but excepting $1,900 in cash received as rentals. The cash on hand was then applied first to the payment of the mortgage in the amount of $7,507.20, and the balance to the payment of the taxpayer's unsecured notes, leaving an unpaid balance of $10,-407.90 on the notes, which was charged off as a business bad debt on the taxpayer's income tax return for 1944. Since December, 1944, the corporate existence of Charles Rosso, Inc., has been maintained, but it

has owned no assets and has engaged in no business.

■ In the Tax Court the taxpayer contended that the losses he suffered from loans to the corporation were incurred in his "trade or business" because "he was engaged individually in the business of operating the restaurant and tavern." In sustaining the Commissioner the Tax Court said: "The difficulty with petitioner's position is that the loss was not incurred in his trade or business. The petitioner was not engaged in the restaurant business. That business was conducted by the corporation and was not his individual business. The Supreme Court made it clear in Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397, that the business of a corporation is not the business of its stockholders or officers."

In the instant case the taxpayer treated the corporation as a separate entity, and the losses incurred in dealing with it as such. In none of the transactions wherein losses occurred was he acting as an investment banker or as a promoter of corporate enterprises. The unfortunate loans "were no part of his ordinary business, but were occasional transactions intended to preserve the value of his investment in capital shares" Burnet v. Clark, supra [287 U.S. 410, 53 S.Ct. 208] and to protect his mortgage loan.

In connection with his brief in this court the taxpayer filed a Motion to Remand to the Tax Court "for the purpose of permitting introduction of further evidence to establish whether the Petitioner was engaged in the business of organizing, managing, and financing more than one corporation." Attached to the motion is a Statement of Additional Facts which it is desired to put in evidence. These facts are that the taxpayer was at various times an officer and stockholder in three different corporations other than Charles Rosso, Inc., and to one of which he loaned money.

The contention is that with this additional evidence in the record this case is controlled by the decisions in Washburn v. Commissioner, 8 Cir., 51 F.2d 949; Maloney v. Spencer, 9 Cir., 172 F.2d 638; Foss v. Commissioner, 1 Cir., 75 F.2d 326; and Vincent C. Campbell v. Commissioner, 11 T.C. 510. These cases do not support that contention. All are distinguishable on their facts. It is true that one may engage in more than one business at a time; that he may engage in promoting and financing corporations, or in managing corporations, or farms or other enterprises as a business. But that is not this case. The taxpayer here sustained the losses in question from loans made to a corporation in whose business his sole interest was to protect a loan made to Charles Rosso. Such loans were not made to the corporation as his agent but to a corporation managed at the time the loans were made by his original debtor Rosso. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 442, 54 S.Ct. 788, 78 L.Ed. 1348.

The Washburn case, supra, is an illustration of the cases relied upon by the taxpayer. There the taxpayer claimed a deduction on his income tax from 1923 for a loss sustained in 1922 from the operation of his trade or business. The issue arose under § 204(a) and (b) of the Revenue Act of 1921, 42 Stat. c. 136, pp. 227, 231, which provided that the term "net loss" means only net losses resulting "from the operation of any trade or business regularly carried on by the taxpayer. * * *" The taxpayer, a lawyer, organized a number of corporations and enterprises. In 1911 he retired from the practice of law to give his entire time to the enterprises in which he was heavily interested. This court held that since he gave his entire time to the management of the particular business so organized by him he was entitled to the deductions claimed. In Snyder v. Commissioner, 295 U.S. 134, 55 S.Ct. 737, 79 L.Ed. 1351, the Supreme Court approved the rule that one who devotes the major portion of his time to speculating on the stock exchange may treat losses thus incurred as having been sustained in the course of a trade or business. In the present case the taxpayer neither alleged nor proved that he devoted a major portion of his time to the management of Charles Rosso, Inc. He did not retire from the practice

of law until 1945. Neither is it shown that he devoted any particular share of his time to the management of the corporations in which he owned shares of stock.

██ In examining the taxpayer's argument we are required to be mindful of the rule that an income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607; Deputy v. du Pont, 308 U.S. 488, 498, 60 S.Ct. 363, 84 L.Ed. 416; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 442, 54 S. Ct. 788, 78 L.Ed. 1348. With this rule in mind we cannot distinguish this case from such decisions as Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397; Dalton v. Bowers, Executor, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed. 389; Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399; Woolford Realty Co. v. Rose, 286 U.S. 319, 326, 52 S.Ct. 568, 76 L.Ed. 1128; Planters Cotton Oil Co. v. Hopkins, 286 U.S. 332, 52 S.Ct. 509, 76 L. Ed. 1135. And see Hickey v. Chahoon, 2 Cir., 153 F.2d 107; Sic v. Commissioner, 8 Cir., 177 F.2d 469, 470.

██ Insofar as the facts are concerned and the reasonable inferences to be drawn therefrom we have jurisdiction to review a decision of the Tax Court in the same manner and to the same extent as we have to review a decision of a district court in civil actions tried without a jury. 26 U. S.C.A. § 1141(a). Upon review there is thus made applicable to the decisions of the Tax Court Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., wherein it is provided that "Findings of fact shall not be set aside unless clearly erroneous * * *" See Pendergrass v. New York Life Ins. Co., 8 Cir., 181 F.2d 136. Whether the Tax Court's finding that the taxpayer's "loss was not incurred in his trade or business" be considered as a finding of fact or as a mixed question of law and fact, it is supported by both the record and the law.

The motion to remand is denied and the decision of the Tax Court is affirmed.