**N. J. NICHOLSON, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 4925.**

United States Court of Appeals, Tenth Circuit.

Dec. 27, 1954.

---

4. See Douglas v. City of Jeannette, 319 U. S. 157, 63 S.Ct. 877, 87 L.Ed. 1324.

Frank M. Cavanaugh, Denver, Colo., for petitioner.

Grant W. Wiprud, Special Asst. to the Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and Lee A. Jackson, Special Assts. to the Atty. Gen., were with him on the brief), for respondent.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, United States Circuit Judges.

HUXMAN, Circuit Judge.

The question presented by this appeal is the treatment to be accorded to a bad debt loss admittedly sustained by the appellant taxpayer in the year 1946 for income tax purposes. The loss sustained by the taxpayer resulted from an advance of $6,891.61 to the Chaffee County Fluorspar Corporation, herein called Fluorspar, and from the endorsement of the Corporation's note in the sum of $4,500. It was stipulated before the Tax Court that the question presented for determination was whether the bad debt in the amount of the two above items was deductible under Section 23(k) (1) of the Internal Revenue Code, 26 U. S.C.A., as a business loss, or under Section 23(k) (4) as a non-business loss. The Tax Court held that the loss was a non-business loss and treated it as such in computing appellant's tax liability for 1946.

Petitioner advances two contentions that were not brought to the attention of the Tax Court. They are (1) that the advances made to the mining company did not constitute a bad debt within the intent and meaning of Section 23(k) and (2) that the loss should have been computed as one incurred in a transaction entered into for profit, though not connected with taxpayer's trade or business under Section 23(e) (2) of the Code. It is, of course, the law, as asserted by appellant, that we may of our own accord for the first time on appeal note a question not presented or urged below. The decisions, however, make it abundantly clear that we should do so only under extraordinary circumstances and to prevent a clear miscarriage of justice. In Athens Roller Mills v. Commissioner, 136 F.2d 125, 127, the Sixth Circuit pointed out that the well established rule should be cast aside only where "in exceptional cases this is necessary to prevent a miscarriage of jus-

tice" and in Tressler v. Commissioner, 206 F.2d 538, 541, the Fourth Circuit refused to consider a question for the first time because "There is, however, no place for such an exception in this case for the issue is solely one of fact and the taxpayer, although well aware of its importance, made no attempt during a prolonged period to bring it to the trial court's attention." We have refused to deviate from the accepted rule in a number of cases.[1] We do not think this case falls within the exception to the general rule. The treatment to be accorded to this deduction depends upon facts which we should not be asked to resolve or find for the first time on appeal.

Section 23(k) (1) authorizes the deduction in full of debts which become worthless during the taxable year but excepts therefrom non-business debts of non-corporate taxpayers, and Section 23 (k) (4) allows deductions of bad debts, but in the case of a non-corporate taxpayer it permits only business debts to be deducted in full and limits non-business worthless debts to a short term capital loss deduction.

Whether the loss was deductible in full depends upon whether it was a business or non-business loss within the intent and meaning of the applicable statutes. That presents an issue of fact. There is no dispute in the evidence in this case. The only question is the permissible deductions and conclusions to be drawn therefrom.

With the exception of a few months, the taxpayer had been engaged in the restaurant business from at least 1936 to and including the year in question. He operated the Knickerbocker Restaurant in Denver, Colorado, from 1936 to 1943. In 1943 he sold his restaurant and took a six months vacation. He thereafter purchased another restaurant in Denver, which he continued to operate until 1949. In 1943 the taxpayer became interested in Fluorspar, through a stockholder, Peter L. Bancroft. Bancroft was a Canadian promoter whom the taxpayer had known for many years. Bancroft had convinced the taxpayer that the corporation which was then short of funds would become a remunerative investment, if sufficient operating funds could be raised through the sale of stock. Taxpayer made a small purchase of stock in 1943 and during 1944 and 1945 increased his purchases to approximately 25,000 shares. In 1944 and 1945 he also undertook to sell stock in the company to other persons. He interested five persons in the purchase of stock, although some of them made their purchases through Bancroft. Such five persons purchased a total of 10,850 shares of stock for a total consideration of $5,000. On May 31, 1945, there were 470,999 shares of stock outstanding. At all times taxpayer owned a small per cent of the issued and outstanding stock. During 1945 taxpayer became active in the affairs of Fluorspar. He devoted about sixty to seventy per cent of his time to the corporation. He made frequent trips to the mines and sometimes used his restaurant office for the transaction of corporate business. He received no compensation for his services to Fluorspar but expected to realize a profit from the stock. It was during this time that he loaned the corporation the amount set out above and endorsed its obligation at the bank in the amount of $4,500.

Taxpayer testified that he was not a regular promoter; that he was not in the business of loaning money; and that prior to his interest in Fluorspar he had not attempted to promote a business since 1912, other than his restaurant business. In 1947 Fluorspar's financial condition became hopeless and bankruptcy proceedings were instituted against it. The worthlessness of the debts sought to be deducted in 1946 is conceded.

1. Hotel Kingkade v. Commissioner, 10 Cir., 180 F.2d 310; Tulsa Tribune Co. v. Commissioner, 10 Cir., 58 F.2d 937.

Based upon the above outlined evidence, the Tax Court found that the taxpayer had never engaged in the business of promoting corporations or of lending money to corporations and concluded that the losses suffered by the taxpayer had no proximate relation to any trade or business engaged in by the petitioner at the time the debts became worthless and was, therefore, deductible as a non-business debt under Section 23 (k) (4) of the Internal Revenue Code.

██ It is our conclusion that these findings are amply sustained by the record. Taxpayer was not engaged in conducting a mining trade or business. That was the business of the corporation which was a distinct corporate legal entity, having its own business, its own capital and its own gains and losses.[2] Where a taxpayer makes advances to or for the account of a corporation of which he is a stockholder and official, a subsequent bad debt loss through the worthlessness of such advances is not incurred in the trade or business of the taxpayer.[3] Neither can it be said that the taxpayer was engaged in the business of organizing corporations or business enterprises. According to his own testimony, this was the only corporation he ever interested himself in. The fact that he purchased stock and made advances to Fluorspar is not sufficient to sustain a finding that he was engaged in the business of organizing and promoting corporations or business ventures.[4] It is our conclusion that the findings of the Tax Court are amply sustained by the record.[5]

The decision appealed from is, therefore, affirmed.

---

2. Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397; Commissioner of Internal Revenue v. Smith, 2 Cir., 203 F. 2d 310, certiorari denied 346 U.S. 816, 74 S.Ct. 27; Omaha National Bank v. Commissioner, 8 Cir., 183 F.2d 899, 25 A.L.R. 2d 628.

3. Omaha National Bank v. Commissioner, 8 Cir., 183 F.2d 899, 25 A.L.R.2d 628; Commissioner of Internal Revenue v. Smith, 2 Cir., 203 F.2d 310; Hickey v. Chahoon, 2 Cir., 153 F.2d 107; Watson v. Commissioner, 2 Cir., 124 F.2d 437.

4. Washburn v. Commissioner, 8 Cir., 51 F.2d 949; Salmon v. Commissioner, 2 Cir., 126 F.2d 203; Gruver v. Helvering, 63 App.D.C. 126, 70 F.2d 292.

5. An instructive discussion of the terms "Trade or Business for Income Tax Purposes" is found in University of Kansas Law Review, Vol. 3, Page 99.