**Max PUTNAM and Elizabeth Putnam, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 15190.**

United States Court of Appeals Eighth Circuit.

Aug. 11, 1955.

Richard E. Williams, Des Moines, Ia., for petitioners.

Dudley J. Godfrey, Jr., Sp. Asst. to Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack and Joseph F. Goetten, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

Petitioners, Max Putnam and Elizabeth Putnam, seek a review and reversal of a decision of the Tax Court of the United States entered on May 13, 1954, sustaining the determination of the Commissioner of Internal Revenue that there was a deficiency in their income tax return for the year 1947 in the sum of $1411.16, and for the year 1948 in the sum of $2121.56.

Petitioners contend here, as they did in the Tax Court, that they were entitled in their 1947 return to a deduction of $8492.32 as a business bad debt deduction under § 23(k) (1) of the Internal Revenue Code of 1939, 26 U.S.C., and in their 1948 return to a deduction of $9005.21 under § 23(k) (1), supra, or as a loss resulting from a transaction entered into for profit within the meaning of § 23(e) (2) of the Internal Revenue Code of 1939. Instead the Commissioner determined that the losses sustained in 1947 and 1948 constituted non-business bad debts deductible only as short-term capital losses under § 23(k) (4) of the Internal Revenue Code. The Tax Court sustained the determination of the Internal Revenue Commissioner, and thereafter petition to review such decision was filed.

The alleged errors of the Tax Court relied on by the petitioners are that:

The court erred in holding that the debts owing petitioner, Max Putnam, which became worthless in 1947 and 1948 were non-business debts, in that (a) the losses resulting from the worthlessness of such debts were proximate to and incurred in petitioner's business as a practicing attorney; (b) that the worthlessness of such debts (if debts existed) was deductible as a loss under said §. 23(k) (1); or (c) that the loss suffered by petitioner as guarantor on the notes he was compelled to pay resulted from a transaction entered into for profit within the meaning of § 23(e) (2) of said Internal Revenue Code.

Petitioners, husband and wife, reside in Des Moines, Iowa. They filed joint income tax returns for the years 1947 and 1948. Since 1931 petitioner, Max Putnam, has been continuously engaged in the practice of law in Des Moines.

The transaction with which we are concerned resulted from the organization of the Whitehouse Publishing Company. In 1944 Putnam became legal counsel for Local 441 of the Railway Workers Union at Des Moines, continuing in that capacity until 1949. Through one Gilbert, business agent of the union, he met Meredith Case, editor of the Des Moines Federationist, a weekly labor newspaper, which had the endorsement of the local trades and labor assembly, but which was controlled by Leo Quinn, business manager of the Local Teamsters' Union, A.F. L., and other union interests.

On August 17, 1946, the Whitehouse Publishing Company was incorporated for the purpose of carrying on a general printing and publishing business. Its capital stock consisted of 15 shares of the par value of $100 each, five shares of which were issued to petitioner, and five shares each to Case and Quinn. While Case and Quinn had a reputation for honesty and integrity, they had no means or cash available to put into the corporation. For himself and on behalf of Case and Quinn, Putnam transferred a lot valued at $1,000 to the corporation, paid $5,500 for the construction of a building thereon, and made a cash contribution of $1,500 as working capital. He also guaranteed the payment for supplies purchased by Whitehouse and of its employees' salaries.

Case and Quinn agreed to and did execute to petitioner their promissory notes, each equal to one-third of the cost of the real estate and the building, and of the cash which Putnam had put into the company. In November, 1946, these notes aggregated the sum of $8,492.32 and were secured by pledge of the Whitehouse Publishing Company stock owned by Case and Quinn. Their debts to the petitioner became worthless in 1947. In February, 1947, Case's notes to petitioner were cancelled and his shares of stock in Whitehouse were assigned to petitioner who was to receive promissory notes in like amount from Whitehouse. In July, 1947, Quinn's notes to petitioner were cancelled and his shares of stock in Whitehouse were assigned to Petitioner, who was to receive notes for the same amount from Whitehouse. Nothing in the record indicates whether petitioner ever received such notes from Whitehouse.

On August 20, 1946, petitioner and Whitehouse Publishing Company borrowed $12,075 from the Central National Bank and Trust Company of Des Moines for the use of the corporation and signed a promissory note therefor as co-makers.

Petitioner, on November 13, 1946, borrowed the sum of $3,500 which he made available to the Whitehouse Publishing Company.

In March, 1947, Whitehouse and petitioner borrowed from the bank the further sum of $5,000 and signed a promissory note therefor as co-makers.

This publishing enterprise was not successful. By July, 1947, the publishing company's only assets were its building and equipment. It was receiving some income from payments on orders for a publication it had printed, but at the same time its indebtedness amounted to $13,500. Its building was sold for $7,000 and it ceased to do business. From the $7,000 thus received $5,000 was used toward paying off the promissory note of August 20, 1946, and $2,000 was turned over to the petitioner for the advances he had made.

In December, 1948, petitioner paid to the bank the balance of $3,500 due on the note of August 20, 1946, and the $5,000 note of March, 1947, which notes with interest totaled the sum of $9,005.-21.

The pertinent statute in determining the issues here is § 23 of the Internal Revenue Code of 1939, 26 U.S.C., § 23, which reads as follows:

"§ 23. *Deductions from gross income.*

\* \* \* \* \* \*

"(e) *Losses by individuals.* In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

"(1) if incurred in trade or business; or

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; \* \* \*

\* \* \* \* \* \*

"(k) *Bad debts.*

"(1) [as amended by Section 124 (a) of the Revenue Act of 1942, and Section 113 of the Revenue Act of 1943] *General rule.* Debts which become worthless within the taxable

year; * * *. This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection.

* * * * * *

"(4) [As added by Section 124(a) of the Revenue Act of 1942, supra] *Non-business debts.* In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term 'non-business debt' means a debt other than a debt evidenced by a security as defined in paragraph (3), and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business."

In this publishing venture which turned out so unfortunately for the petitioner, Max Putnam, there is no question but that he sustained the losses for which he claims deductions in the joint income tax returns of himself and his wife for the years 1947 and 1948.

However, the questions we must answer are whether the losses which he suffered were proximate to and incurred in his business as a practicing attorney and whether the balance of the debt he was compelled to pay to the bank was connected with a transaction entered into for profit, or a "non-business" debt.

Petitioner does not contend that he was in the business of investing in, organizing, and financing business enterprises as such. He was a practicing attorney. He contends that all of his activities connected with various enterprises, including the advances and loans to Case and Quinn, were part of his activities as a lawyer directed toward the betterment of attorney-client relationships and for increasing his clientele.

To show that the loss of $8492.32 resulting from the debts owing him by Case and Quinn were proximate to and incurred in his business as a practicing attorney he calls attention to two cases from the Tax Court: Fisher Brown v. Commissioner, 9 T.C.Mem. 1045, and Hogan v. Commissioner, 3 T.C. 691; also cited is the case of Maloney v. Spencer, 9 Cir., 172 F.2d 638. A reading of these cases does not convince us that the situations in them are analogous to the situation here, as petitioner contends. The loans to Case and Quinn were not proximate to or incurred by him as an attorney; they were not essential to his law practice. Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397; Omaha National Bank v. Commissioner, 8 Cir., 183 F.2d 899, 25 A.L.R.2d 628. His loss from the debts owing him by Case and Quinn was not " 'attributable to the operation of a trade or business regularly carried on by the taxpayer.' " Dalton v. Bowers, 287 U.S. 404, 409, 53 S.Ct. 205, 206, 77 L.Ed. 389.

In the cases cited, supra, by the petitioner the taxpayers advanced money to or guaranteed loans for businesses which were closely associated with their various business enterprises. For instance, in the Fisher Brown case the taxpayer was a wholesale distributor of furniture. He advanced and loaned money to his son-in-law, a manufacturer of furniture. The business failed and taxpayer's loss was treated as a business bad debt under § 23(k)(1) of the Internal Revenue Code, the Tax Court saying: "We conclude that the petitioner made the advances to Marin as loans for purposes connected with his business as a distributor of furniture * * *." We fail to see the analogy and hold this contention to be without merit.

The facts here bear a striking similarity to the facts in the case of Omaha National Bank v. Commissioner, 8 Cir., 183 F.2d 899, 25 A.L.R.2d 628. There L. F. Crofoot, deceased before the case reached the appellate court, and for whose estate the bank was special administrator, was a practicing attorney in Omaha, Nebraska, during all the period involved. In order to protect loans he had made to one Rosso, a restaurant and tavern operator, the business was in-

corporated with a capital stock of $40,000, and finally the taxpayer owned 333 shares of the stock for which he had paid $33,450. From its inception the business did not prosper, and finally the corporate assets, including the building, were sold for $15,000. After the distribution of the assets there was still owing the taxpayer on money loaned to the corporation the sum of $10,407.90, which he claimed as a business bad debt. The Tax Court held that his losses were not suffered in his "trade or business"; that the petitioner was not engaged in the restaurant business, which was conducted by a corporation; and that it was not his individual business. One of the principal cases relied on by the Tax Court was that of Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 208, 77 L.Ed. 397, wherein it was said: "The unfortunate endorsements were no part of his ordinary business, but were occasional transactions intended to preserve the value of his investment in capital shares." This court affirmed, holding that the loss suffered by the taxpayer was not incurred "in his trade or business." See, also, Nicholson v. Commissioner, 10 Cir., 218 F.2d 240; Chicago Title & Trust Co. v. United States, 7 Cir., 209 F.2d 773; Commissioner of Internal Revenue v. Smith, 2 Cir., 203 F.2d 310, certiorari denied, 346 U.S. 816, 74 S.Ct. 27, 98 L.Ed. 343. The loans advanced to Case and Quinn were not business bad debts allowable as deductions under § 23(k) (1), but the loss of the $8292.32 which taxpayer sustained in 1947 constituted a non-business bad debt deductible only as a short-term capital loss under § 23(k) (4) of the Internal Revenue Code of 1939.

Finally we consider whether the losses of petitioner resulted from a transaction entered into for profit within the meaning of § 23(e) (2), "though not connected with the trade or business".

■ We have already considered that the loans made to Case and Quinn resulting in the loss of $8492.32 were non-business bad debts deductible as short-term capital losses. These loans cannot be considered as transactions entered into for profit within the meaning of § 23(e) (2). Only if the publishing venture had proved successful would there have been any chance to be reimbursed by Case and Quinn. At no time had they anything of value from which reimbursement could be had. Petitioner admits they were "judgment-proof."

We next consider whether the loss which resulted in 1948 comes under § 23(e) (2). In December, 1948, taxpayer was compelled to pay to the bank the sum of $9005.21. The amount represented the balance of $3500 due on the $12,075 note of August 20, 1946, and the $5000 note executed in March, 1947, both of which notes petitioner signed as co-maker with the Whitehouse Publishing Company.

Very little discussion is needed on this point. It is true that in the case of Cudlip v. Commissioner, 6 Cir., 220 F.2d 565, 570, that court reversed the decision of the Tax Court. Cudlip was an attorney, and his law practice had to do principally with banks, corporations and business ventures. He became interested in WiRecorder Corporation, and in 1947 with two others he became a guarantor on the corporation's note for $90,000. The corporation was not successful and on November 23, 1949, notified the bank that it was unable to meet its obligation upon the note. Whereupon, in accordance with his guaranty agreement, Cudlip paid the bank on November 25, 1949, $30,000 plus $200 of interest due on the note. The other guarantors likewise paid $30,000 each on the note. The corporation was insolvent; its corporate existence terminated on December 13, 1949; and petitioner Cudlip never recovered anything from the corporation. The Sixth Circuit, reversing the decision of the Tax Court, stated that the loss incurred resulted from a transaction entered into for profit under § 23(e) (2). In its opinion the court said that "Taxation is concerned with realities; and * * * the contentions here advanced by the Commissioner are completely unrealistic", and remanded the case for allowance of the

952

claimed deduction under § 23(e) (2), relying particularly upon Pollak v. Commissioner, 3 Cir., 209 F.2d 57, 58, and Allen v. Edwards, D.C.Ga., 114 F.Supp. 672, 674, affirmed by the Fifth Circuit in Edwards v. Allen, 216 F.2d 794. In a vigorous dissenting opinion, Judge Stewart stated: "Yet, until the Pollak and Allen cases, and today's decision in this case, the debt so arising has consistently been considered nonetheless deductible as a bad debt, although it became worthless immediately upon its ripening from a secondary obligation into a debt." Citing cases:

 Considerable diversity of opinion exists among the different circuits as to deductions from gross income under § 23 of the Internal Revenue Code. We find no case in the Supreme Court overruling its decision as to a non-business bad debt loss since the publication of its decision in Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397. In spite of the recent opinion of the Sixth Circuit in the Cudlip case, supra, the great weight of authority is that a transaction such as that of Whitehouse Publishing Company and petitioner with the bank, wherein petitioner was compelled, as comaker or guarantor, to pay the balance due on the notes to the bank in the sum of $9,005.21, including interest, is a non-business bad debt deductible as a short-term capital loss under § 23(k) (4), and that such loss does not come under the provisions of § 23(e) (2) where deduction is allowable "if incurred in any transaction entered into for profit, though not connected with the trade or business". See and compare Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397; Commissioner of Internal Revenue v. Smith, 2 Cir., 203 F.2d 610; W. F. Young, Inc., v. Commissioner, 1 Cir., 120 F.2d 159.

The decision of the Tax Court as to a deficiency in the petitioners' income tax returns for 1947 and 1948 in the sums of $1411.16 and $2121.56, respectively, is, therefore,

Affirmed.