Harry and Amanda SCHROEDER, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 16439.

United States Court of Appeals
Eighth Circuit.

June 23, 1961.

Bert B. Rand, Washington, D. C., Leland C. White, Harlan, Iowa, Hans A. Nathan, Laurence D. Pearl, of Trammell, Rand & Nathan, Washington, D. C., on brief, for petitioners.

Gilbert E. Andrews, Jr., Attorney, Department of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Robert N. Anderson, Attorneys, Department of Justice, Tax Division, Washington, D. C., were with Gilbert E. Andrews, Jr., Washington, D. C., on brief, for respondent.

Before VOGEL and BLACKMUN, Circuit Judges, and DAVIES, District Judge.

RONALD N. DAVIES, District Judge.

This case comes to us on petition of Harry and Amanda Schroeder for a review of the decision of the Tax Court of the United States, 16 TCM 707, Amending Order 17 TCM 836, which sustained a determination by the Commissioner of Internal Revenue of deficiencies in the income taxes of Harry Schroeder for 1944 and 1945 and of deficiencies in the income taxes of both petitioners for 1946 and 1947. Addition to tax was determined under § 291(a) for the year 1946 for failure to file a return as required by § 51(a) within the time prescribed, and further additions were determined for the years 1944 through 1946 under § 293(b) because of fraud with intent to evade tax.

The petitioners are residents of Tabor, Iowa, where Harry Schroeder has been engaged in cattle feeding a good share of his life. Although the petitioner dealt in other animals, most transactions herein concerned cattle which were purchased from livestock commission merchants, brokers and dealers. Normally, two and three year old grass fed cattle were selected, the number purchased at any one time ranging from a few dozen to more than two thousand head. These cattle were placed in feed lots for periods from thirty days to four or five months before being marketed. Immature cattle were grazed until ready for feed lots, and as many as twenty months could elapse between time of purchase and sale. The cattle were commingled in various feed lots irrespective of purchase date or price paid. Petitioner financed his cattle purchases with loans, and a part of approximately eighty per cent of his purchases was mortgaged.

Petitioner Harry Schroeder reported his annual income on a cash receipts and disbursements basis, deducting from gross receipts the computed cost of cattle sold in that year without regard to purchase date. Cost of the livestock sold was based upon an estimate prepared by petitioner and his accountant. In preparing the estimate a cutoff date was chosen, usually on or about September 15th, it being assumed that all cattle purchased after that time were on hand at the end of the year. The 1945 return indicated that the livestock carry-over from 1945 to 1946 was $680,010.70. On the 1946 return the livestock carry-over from 1945 was $496,281.05. The return for

1946 showed a livestock carry-over to 1947 in the amount of $605,300.58. The return for 1947 shows a livestock carry-over from 1946 of $555,168.88.

No separate records or identification of the various herds were maintained although petitioner visited the feed lots almost every day and was familiar with the types and number of cattle there. No formal books were kept of feeding operations, the records consisting of bank statements, liability ledger sheets, canceled checks, bills of sale and purchase invoices. Most of the business was handled by telephone with no records or memoranda being made of the transactions. Not all of the proceeds from cattle sales were deposited in bank accounts, some being applied directly on notes payable to banks. The only actual head count of livestock taken was in September of 1947 when the petitioner formed the Harry Schroeder Cattle Co., Inc., and Harry Schroeder, Inc.

A thirty day extension of time in which to file an income tax return for 1946 was obtained by petitioner and a tentative individual return filed April 15, 1947, disclosing a net income of $51,500 and tax liability of $25,479. The return contained no computation of gross receipts, cost of livestock sold or gross profits, and no schedules showing computation of net income. On July 15, 1948, a joint return for 1946 was filed which did contain a schedule reflecting gross receipts, cost of livestock sold, gross profits, net income and which disclosed tax liability of $185,374.14.

The Commissioner computed petitioners' taxable incomes for the years involved by alternate methods, net worth and by a statement of income and expense, both computations reaching the same total taxable incomes. The sources of both computations were basically the same, the principal disputed item being the cost of livestock on hand at the beginning of each taxable year. Since error in either computation will be reflected as well in the other, our discussion will be limited to that of the net worth method. Because of petitioner's failure to make regular physical head counts, the Commissioner worked backward from the actual head count taken in 1947 and, using petitioner's records and memoranda, established a cost basis of livestock on hand December 31, 1946. To determine this for livestock on hand as of December 31, 1944 and 1945, respectively, it was assumed that all livestock purchased in the last ninety days of each year were still on hand at the end of that year.

The Tax Court held that (1) the Commissioner was justified in adopting the net worth method of computing petitioners' income, (2) the lack of proper record keeping compelled the use of the ninety day cutoff in determining the livestock carry-over, (3) a part of the deficiencies for each of the years 1944 through 1946 was due to fraud with an intent to evade tax and (4) petitioners were liable for additions to tax for failure to file a timely return for the year 1946 within the meaning of § 51(a), Internal Revenue Code of 1939, 26 U.S. C.A. § 51(a).

"[7] Decisions of the Tax Court are to be reviewed by the same standards as are applied to decisions of the district court in civil cases tried without a jury. Findings of fact by the Tax Court shall not be set aside unless they are clearly erroneous. Greenspon v. Commissioner, 8 Cir., 229 F.2d 947, 949; Omaha Nat. Bank v. Commissioner, 8 Cir., 183 F.2d 899, 902, 25 A.L.R. 2d 628; Doll v. Commissioner, 8 Cir., 149 F.2d 239, 247." Luehrmann's Estate v. C. I. R., 8 Cir., 287 F.2d 10, 15.

" * * * A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746.

**652**

■ It is unnecessary for the Commissioner to show that inadequate books and records have been kept by the taxpayer before resorting to the net worth method of computing taxable income for the years in question. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L. Ed. 150.

In Schultz v. C. I. R., 5 Cir., 278 F.2d 927, 929, the Court said:

"[1–3] The Taxpayer insists that under § 41 [2] the net income is to be computed in accordance with the method of accounting regularly employed by a taxpayer. Consequently, where a taxpayer keeps books and records, the Commission has the burden of first establishing that the records are faulty or either negligently or fraudulently fail to reflect items of income or disbursements. But this is clearly not so. This Court, with many others, is conscious of the dangers in the use of the net worth method [3] and will require that there be adequate evidence [4] to support a determination that the true income is represented by the process of reconstruction.

But once that is satisfied, neither the method nor the evidence undergoes an added scrutiny because the taxpayer's books are to this extent disregarded. Indeed, the determination that the trier of fact had requisite basis for concluding that income was truly that shown by the reconstruction process is a simultaneous determination that no matter how neatly or diligently or consistently or conscientiously kept, the books and records were inadequate.
* * * "

■ The Commissioner's determination of a deficiency is prima facie correct, and the burden is upon the taxpayer to disprove that determination. Marcella v. C. I. R., 8 Cir., 222 F.2d 878; Lusk v. C. I. R., 7 Cir., 250 F.2d 591.

■■ Because a physical head count of cattle was never made prior to September, 1947, that no books were kept of the cattle feeding operations and that even petitioner and his accountant estimated the livestock carry-over each year, resort to the net worth method was necessitated. The principal item here in dispute is the cost of livestock on hand

---

"2. '§ 41. General rule

" 'The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *' 26 U.S.C.A. § 41 [1939 I.R.C.].

"Somewhat related is § 54 of the 1939 Code, Records and Special returns:

" '(a) By taxpayer. Every person liable to any tax imposed by this chapter or for the collection thereof, shall keep such records, render under oath such statements, make such returns, and comply with such rules and regulations, as the Commissioner, with the approval of the Secretary, may from time to time prescribe.' " 26 U.S.C.A. § 54 [1939 I.R.C.].

"3. Bryan v. Commissioner, 5 Cir., 1954, 209 F.2d 822, 826; Polizzi v. Commissioner, 6 Cir., 1959, 265 F.2d 498, 502; Thomas v. Commissioner, 1 Cir., 1956, 232 F.2d 520, 525; Thomas v. Commissioner, 6 Cir., 1955, 223 F.2d 83. Both Thomas cases were approved and followed by this Court in Phillips' Estate v. Commissioner, 5 Cir., 1957, 246 F.2d 209; see also the final action by the 6th Circuit in the latest appeal of the Thomas case, Thomas v. Commissioner, 6 Cir., 1959, 266 F.2d 297; Veino v. Fahs, 5 Cir., 1958, 257 F.2d 364; Gunn v. Commissioner, 8 Cir., 1957, 247 F.2d 359; Harp v. Commissioner, 6 Cir., 1959, 263 F.2d 139."

"4. The standard for appeals from the Tax Court is the clearly erroneous concept under F.R.Civ.P. 52(a) for appeals from nonjury trials in the District Court. See 26 U.S.C.A. § 7482. Appeals from judgments entered in a jury trial are reviewed under the familiar substantial evidence rule. Marsh v. Illinois Central R. Co., 5 Cir., 1949, 175 F.2d 498."

at the beginning of each year for which the instant deficiencies were determined. The petitioner in this court, as in the Tax Court, vigorously attacks the Commissioner's use of the ninety day cutoff to establish cost of cattle carried over into the succeeding year. The Tax Court held that the Commissioner was not only justified in adopting this method but that petitioner's lack of records compelled it. We agree. The method used by the petitioner and his accountant in arriving at the year end cost of the cattle on hand was similar to that used by the Commissioner. In net worth cases the fact finder is warranted in bearing heavily against the contentions of the taxpayer whose inexactitude is of his own making, and where the findings are based upon the entire record, they cannot be said to be clearly erroneous. Gatling v. C. I. R., 4 Cir., 286 F. 2d 139.

In holding that part of the deficiencies for each of the years 1944 through 1946 was due to fraud with intent to evade tax, the Tax Court recognized that the burden rested upon the Commissioner to prove fraud by clear and convincing evidence. § 1112, Internal Revenue Code of 1939, 26 U.S.C.A. § 1112. Fraud is a question of fact, and the Tax Court finding is binding if supported by substantial evidence. Helvering v. Kehoe, 309 U.S. 277, 60 S.Ct. 549, 84 L.Ed. 751; Bender v. C. I. R., 7 Cir., 256 F.2d 771.

In the case before us the Tax Court had this to say concerning the fraud issue:

" * * * The burden rests upon the respondent to prove fraud by clear and convincing evidence. Arlette Coat Co., 14 T.C. 751. There were consistent understatements of income of a substantial nature over the years before us. Petitioner reported income for the years 1944, 1945, 1946 and 1947 in the sums of $487, $11,840, $51,500 and $249,506, respectively. The completely unrealistic nature of his reported income is graphically demonstrated by the net worth computation and the profit and loss statement prepared by respondent, which computations we have, on the basis of the entire record, sustained, and which show unreported income for the years 1944, 1945, 1946 and 1947 in the amounts of $163,609, $148,379, $364,140 and $61,149, respectively. Such a pattern of repeated gross understatements of income without an adequate explanation is evidence of fraudulent intent. Schwarzkopf v. Commissioner, [3 Cir., 246] F.2d [731] (July 10, 1957), affirming a Memorandum Opinion of this court; Kilpatrick v. Commissioner, [5 Cir.] 227 F.2d 240, affirming 22 T. C. 446. We are persuaded from the impressive growth in the scope of petitioner's operations and from the financial statements filed by petitioner with his bank over these years, that the petitioner was fully aware that his income was not accurately reported in his returns for those years. Our findings reveal a marked discrepancy between the small amounts of taxable income reported by petitioner in those years and the amounts as determined by the respondent in his net worth computation.

"Another strong indication of fraud on petitioner's part is the matter of the altered checks. Approximately 20 checks were made out by petitioner for payment of real estate purchased by him in each of the years 1944, 1945 and 1946. After these checks were cashed, notations regarding real estate were erased and new notations were placed on the checks indicating that the amounts were payment for corn, fodder and other operating expenses. Petitioner, in 1946, purchased a Reo truck at a price of $2,638.49, which amount he paid by check. In the lower left hand corner of the check a notation was made that it was in payment for approximately 1,600

bushels of corn at $1.65. It is to be noted that, for the most part, the notations indicated that the full amount of the check was for these various operating expenditures. This reveals the weakness in petitioner's attempt to explain such notations by saying that they resulted from an attempt to find out what portion of each real estate purchase represented non-real estate items. It fairly appears that petitioner deducted as an operating expense for the years involved the amounts indicated on the altered checks. Petitioner conducted large scale feeding operations during the years here involved, and he impressed us as an intelligent businessman. We hold, after an examination of the entire record, that a part of the deficiencies for each of the years 1944 through 1947 was due to fraud with intent to evade tax." (Note: Only the years 1944 through 1946 are involved in this appeal).

■ We cannot say the Tax Court was in error. The holding that petitioner failed to file a return for the year 1946 as required by § 51(a), Internal Revenue Code of 1939, was based upon the finding that no computations or schedules were shown on the return which was blank except for a net income figure and the amount of tax due thereon. No evidence was offered to show that failure to file was due to reasonable cause and not willful neglect. We think the problem was well stated by the 9th Circuit in Ferrando v. United States, 245 F.2d 582, 588 when that Court said:

"*    *    * the filing of an admittedly incomplete, inaccurate, and estimated return does not of itself relieve the tardy taxpayer of liability for a penalty. If such an excuse were accepted, it would put a premium upon belated and slipshod filing. A careless and neglectful taxpayer could wait until the last minute, present an amorphous return and escape the penalty. We do not believe that such is the genius and spirit of the Federal estate tax law. Congress did not intend that taxpayers should be permitted thus to play ducks and drakes with the collection of the Federal fisc.

"A similar situation confronted the Court of Appeals for the Tenth Circuit in Sanders [Sanders v. Commissioner], supra, 225 F.2d [629] at page 637. There it was said:

" 'The taxpayers filed tentative or skelton returns which contained no detailed information as to income or deductions. The completed returns were not filed until a number of years after the due date. The taxpayers' books were not posted and an effective audit could not be made. The last payments from the United States were received by Sanders in 1949, and a return was not filed until September of 1952, after notice of deficiencies had been given and the liens had been filed. *The record discloses sufficient evidence to sustain the decisions of the Tax Court in upholding the assessment of penalties and interest.'* [Emphasis supplied.]"

Petitioners here having failed to meet their burden of establishing that the failure to file a return was due to reasonable cause and because the defective return filed before the due date was not sufficient to protect the petitioners here from the addition, there is no reason for this court to disturb the decision of the Tax Court of the United States.

We have considered other questions raised herein but find none of such substance or merit as to require discussion. Finding no reversible error, the judgment of the Tax Court is

Affirmed.