CLEO STEPHENS DENISON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Denison v. Commissioner
Docket No. 8076-80.
United States Tax Court
T.C. Memo 1984-185; 1984 Tax Ct. Memo LEXIS 489; 47 T.C.M. (CCH) 1496; T.C.M. (RIA) 84185; April 12, 1984. Cleo Stephens Denison, pro se. Paula M. Jung, for the respondent. GOFFE
SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: On December 31, 1981, we filed our Memorandum Findings of Fact and Opinion (T.C. Memo. 1981-738) in which we sustained the Commissioner's determination of a deficiency and additions to tax under sections 6651(a)(1) and 6653(a) [1] for the taxable year 1977. On February 22, 1982, petitioner filed a notice of appeal to the United States Court of Appeals for the Eighth Circuit. On October 4, 1982, the Court of Appeals in a per curiam opinion reversed and remanded our decision for further proceedings "with instructions to permit the Government to produce evidence of the reasonableness of *490 its reconstruction of Denison's taxable income for the tax year 1977, and to determine whether the Commissioner's assessment should be sustained or appropriately modified under the circumstances disclosed by the record." Denison v. Commissioner,689 F.2d 771, 773 (8th Cir. 1982). In its opinion, the Court of Appeals pointed out that we did not require respondent "to show any rational basis for its method of determining the deficiency" and that we decided the case without requiring respondent to offer any evidence on this matter. Upon reviewing the record, the Court of Appeals declined to find that the method chosen by the Commissioner was reasonable on its face and, therefore, held that the presumption of correctness, which usually attaches automatically to the determination in the notice of deficiency, did not apply in this case. Denison v. Commissioner,supra at 773. FINDINGS OF FACT Petitioner is a masonry construction contractor and bricklayer residing in Lynn, Arkansas. For the taxable years 1975 and 1976, petitioner and his wife filed joint Federal *491 income tax returns. For the taxable year 1977, which is in issue, petitioner and his wife sent the Internal Revenue Service a 46-page document which included a Federal income tax return Form 1040 on which they supplied only their names and address. In the 44 pages attached to the Form 1040, they set forth various constitutional grounds as the bases for their objections to supplying information as to their income tax liability for the taxable year 1977. [2] Petitioners were in no danger of criminal prosecution at the time they filed their return or at any time subsequent to the filing. Petitioner kept no books or records during 1977 to substantiate income or business expenses. Petitioner, a tax protestor, [3] failed to file a return or provide any information from which his income tax liability for 1977 could be determined. The Commissioner, therefore, was placed in the position of having to reconstruct petitioner's income. *492 The Commissioner started with the gross receipts as shown on petitioner's tax returns for the two previous years. On his Federal income tax return for 1975, petitioner reported gross business receipts of $21,465.56, from which he subtracted $16,915.35 (approximately 79 percent) of the gross amount as representing cost of goods sold. Of this amount, petitioner claimed $6,407.56 as cost of materials and supplies and $10,507.79 as cost of labor. In reconstructing petitioner's 1977 taxable income, the Commissioner found that petitioner's substantiated itemized deductions for 1975 were significantly less than the amount that would have been allowed petitioner using the standard deduction. On his 1976 return, however, petitioner reported gross business receipts of $12,815 and subtracted cost of goods sold in the amount of $8,215.93, or 64 percent of the gross amount. Of this amount, petitioner claimed $5,769.43 as cost of materials and supplies and $2,446.50 as cost of labor. The Commissioner accepted the gross profit figure for 1976 ($4,599.07) and adopted petitioner's ratio of cost of goods sold to gross profit for 1976 as correct. Using the 1976 ratio, the Commissioner redetermined *493 petitioner's gross profit for 1975 to be $7,727.60. The Commissioner then used in his computation of petitioner's income for 1977 the average of petitioner's reconstructed gross profit for the two previous years, less the zero bracket amount and personal exemptions allowed by the tax tables for married persons filing separately. The deficiency for 1977 was determined to be $1,108.90. In his statutory notice, the Commissioner explained his method of reconstruction to Mr. Denison: In the absence of adequate records, your gross profit in taxable year 1977 from self-employment is determined on the basis of the average of your gross profit for the previous 2 years as shown below: Gross profit in 1975
$ 7,727.60
Gross profit in 1976
4,599.07
Total
$12,326.67
Average
$ 6,163.34
As no deductions from gross profit have been substantiated, $6,163.34 is determined to be your tax table [sic] income. Petitioner, an independent contractor, performed bricklaying work for at least one business, Sheets Materials Company (hereinafter Sheets Materials), located in Randolph County, Arkansas. Sheets Materials in 1977 and other years supplied all materials necessary for *494 petitioner's bricklaying work. In 1977 petitioner performed approximately six or seven contract jobs for Sheets Materials, averaging about two weeks per job. Mr. Sheets of Sheets Materials prepared forms 1099 reflecting amounts paid to petitioner in 1977 for subcontracted bricklaying. These 1099's show that Sheets Materials paid $5,410 to petitioner in 1977. Ten cancelled checks made payable to petitioner show that a total of $5,905 was actually paid to him during 1977. The $495 discrepency was due to a bookkeeping error made by Sheets Materials. OPINION Petitioner argues that the Tax Court and Internal Revenue Service have no jurisdiction to redetermine his income tax liability; that he is immune from income taxation; and that the record-keeping requirements of the Internal Revenue Code constitute involuntary servitude prohibited by the 13th Amendment of the Constitution. Petitioner at no point addresses the merits of the Commissioner's determination of his income tax liabilities. His brief is a collage of pre-printed, discredited constitutional "literature" which he presents as a petition for "redress of grievances" and a challenge to the jurisdiction of this Court. *495 Petitioner has invoked not only the Constitution of the United States, but also the laws of the State of Arkansas, the Common Law, the Law Merchant, state commercial codes, and International Law in support of his claim to immunity from income taxation as an "unfranchised individual." He claims further that wages for personal service are not income; that Federal Reserve Notes are not legal tender; that his burden of proof is unconstitutionally imposed; and that his rights to redress of grievances, equal protection, due process, and a jury trial have been violated. The myriad a constitutional arguments advanced by petitioner have been fully considered and rejected as frivolous in many prior opinions of this Court and others. We decline to review further petitioner's wildly espoused legal theories. See McCoy v. Commissioner,76 T.C. 1027 (1981), affd. 696 F.2d 1234 (9th Cir. 1983). At trial on remand, petitioner attempted to invoke Fifth Amendment protection against self-incrimination and refused to answer two questions: (1) whether he received any payments in 1977 for work as a masonry construction contractor, bricklayer, or mason; and (2) whether *496 he performed services or labor for anyone other than the one construction contractor who testified. Petitioner invoked the jurisdiction of this Court by petition and testified freely throughout the original trial and again at the trial on remand until asked the two specific questions: MS. JUNG: My question is this, in the year 1977 did you receive payment for work as a masonry construction contractor, as a brick layer or as a mason or did you receive any other business income of any sort in that year? THE WITNESS: I'm going to take the Fifth Amendment on that. THE COURT: You take the Fifth Amendment? THE WITNESS: Yes, sir. THE COURT: On what grounds? THE WITNESS: That it might intend [sic] to incriminate me on future charges or -- that might be brought again me. THE COURT: I'm not sure what those charges could be. THE WITNESS: I don't know, but the Internal Revenue can come up with some of the darnest things sometimes. * * * Well, I understand, Your Honor, that unless I claim my rights at the time that I'm under oath to testify I cannot later claim them if it goes on record of what I've said. That's the reason I use the Fifth Amendment. If you'll *497 grant me immunity to any possible criminal charges on that, well then I could answer -- THE COURT: I have no power to grant you immunity. THE WITNESS: I refuse to waiver [sic] my Constitutional Rights then. THE COURT: I won't order him to answer. MS. JUNG: Well, Your Honor, we'd like to clarify for the record that this is a Civil proceeding by [sic] filing petition Mr. Denison has placed his 1977 income tax liability into question. THE COURT: Right. MS. JUNG: The petition itself and testimony he himself has already offered relates to that. It's our position that he has waived any objection he might have to answering that question.
Counsel is also -- for Respondent is also prepared to state at this time that insofar as any knowledge Counsel has there is no pending or contemplated criminal action either being considered or pending against Mr. Denison for relating to the year -- his income tax liability in the year 1977. THE COURT: In other words there's no threat of criminal prosecution? MS. JUNG: Insofar as Respondent knows there is none that Respondent knows of, Counsel for Respondent knows of.As relating to the year 1977, that's all I can say. I do not *498 know of any in the future or planned. THE COURT: Well, I'll overrule the objection then and direct him to answer the question. That's what the cases hold that there's no threat of criminal prosecution, Petitioner invoke[d] the jurisdiction of the Court to redetermine the tax liability. Therefore, Petitioner has to answer the question. THE WITNESS: I have to answer the question? THE COURT: That's right.You filed the petition. THE WITNESS: I still object to -- under the Fifth Amendment, and just a minute -- let me -- I'd like to quote from -- THE COURT: You'd like what? THE WITNESS: I'd like to quote here from the case Hale vs. Hinkley, 201 U.S., page 74, the "Individual may stand up on his Constitutional Rights as a citizen. He is entitled to carry on his private business in his own way. His power to contract is unlimited. He owes no duty to the State or his neighbor to divulge his business or to open his doors to an investigation so far as it may intend to incriminate him.He owes no duty to the State since he receives nothing from -- therefrom, beyond the protection of life and property. His rights are such as exists by law of the land long *499 antecedent to the organization of the State and can only be taken from him by due process of Law and in accordance with the Constitution. (inaudible) -- his rights are a refusal to incriminate himself and the immunity of himself and his property from arrest or seizure except under a warrant of law. He owes nothing to the public so long as he does not trespass upon their rights." That's from Hale vs. Hinkley, 201 U.S., page 74. THE COURT: Well, then you won't answer the question, is that right? THE WITNESS: That's true. * * * THE COURT: Then you have no other evidence to offer? THE WITNESS: No, sir. Respondent then moved to have petitioner's direct testimony stricken. Petitioner had already testified on direct regarding his masonry contracting work during the taxable year in issue. By invoking the privilege against self-incrimination on cross-examination, petitioner precluded inquiry into the details of his direct testimony. This deprived respondent of his right to test the truth of petitioner's direct testimony. Accordingly, we hold that petitioner's direct testimony is stricken. United States v. Cardillo,316 F.2d 606, 611 (2d Cir. 1963). *500 The Commissioner's determination of a deficiency, as a general rule, has the support of a presumption of correctness, and petitioner has the burden of proving it to be wrong. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111, 115 (1933); Schroeder v. Commissioner,291 F.2d 649 (8th Cir. 1961), affg. a Memorandum Opinion of this Court, cert. denied 368 U.S. 985 (1962). Inexactitude of a petitioner's own making can compel respondent's use of an indirect method to determine taxable income. Schroeder v. Commissioner,supra at 653. Generally the Commissioner may reconstruct taxable income by any reasonable method. See Thor Power Tool Co. v. Commissioner,439 U.S. 522 (1979), affg. 64 T.C. 154 (1975). A showing by petitioner that the statutory notice is arbitrary or excessive or without foundation may shift the burden of going forward with the evidence to respondent. Helvering v. Taylor,293 U.S. 507 (1935); Jackson v. Commissioner,73 T.C. 394 (1979). As we held in Roberts v. Commissioner,62 T.C. 834 (1974), *501 however, "[t]he Commissioner's determination is not made arbitrary or unreasonable because of his failure to have all the facts when the failure is caused solely by the petitioner." 62 T.C. at 836-837. In the present case, petitioner's assertion that respondent's determination of his tax liability for 1977 is excessive or without rational basis is not supported by the record. Petitioner did not even offer evidence sufficient to meet his burden of proving that the Commissioner's determination was erroneous. Other than the self-serving statements about how ill health prevented him from working at capacity during the taxable year and that he had large wholly unsubstantiated business expenses, petitioner persistently refused to offer records or any credible evidence. Petitioner didn't even file a tax return reflecting the income shown on the checks of Sheets Materials which he cashed. The evidence does show, however, that petitioner performed at least six or seven contract jobs which he obtained through Sheets Materials and for which he received compensation for masonry labor in the amount of $5,905. When counsel for respondent asked petitioner if he earned other *502 income in 1977, he refused to answer. Mr. Sheets testified that, with the exception of tools, petitioner had all construction material necessary for each job supplied to him by Sheets Materials. We found Mr. Sheets to be a credible witness and, furthermore, petitioner who cross-examined him did not challenge this testimony. On this basis, we conclude that petitioner is probably not entitled to any allowance for cost of goods sold although the Commissioner allowed 64 percent. This 64-percent allowance is incorporated into the Commissioner's computation of petitioner's income. Petitioner apparently feels that he is entitled to deductions in excess of this amount. He has in no way, however, substantiated this claim or any other claim. If we accept the fact that petitioner earned income only from Sheets Materials (which fact is not in any way supported by the record) and further, that he incurred no cost of goods sold in earning the income from Sheets Materials as Mr. Sheets stated, the $6,163.34 determined to be petitioner's gross profit by the Commissioner could hardly be said to be excessive. Thus, even if petitioner's testimony were not stricken, we would still find that the *503 Commissioner's method of reconstructing petitioner's income was reasonable and that petitioner had not sustained his burden of proving otherwise. Accordingly, we hold that respondent's method of reconstruction is reasonable, represents the true income of petitioner based upon all of the evidence available, and is, therefore, sustained. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. Petitioner's wife subsequently filed a completed Form 1040 for the taxable year 1977 as a married person filing separately. She reported her income from wages, claiming the standard deduction, and is not a party to these proceedings.↩
3. Petitioner has filed similar protest returns for the taxable years 1978, 1979, and 1980. His petition for redetermination of the deficiencies for those years is pending before this Court in Docket No. 25057-82.↩